IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARETHA SIMMONS, for herself and on behalf of DAVIANNA SIMMONS, a minor, EMILY SIMMONS and KEITH SIMMONS, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF CHICAGO; CHICAGO POLICE OFFICERS ANTHONY M. BABICZ (Star 12652); J. L. CWICK; STEVEN L. HEFEL (Star 13074); JUSTIN M. HOMER (Star 10979); SEARGENT BRIAN J. KINNANE (Star 1120); MICHAEL R. LAURIE (Star 15108); JOHN D. OKEEFE (Star 18418); W. A. MUZUPAPPA (Star 14845); UNIT COMMANDER JAMES M. ROUSSELL (Star 273); MICHAEL W. SUING (Star 17006); JOHN E. WRIGLEY (Star 7179); P. D. YOUNG (Star 16017); AS-YET UNKNOWN CHICAGO POLICE OFFICERS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br><br><br><br><br><br><br><br><br><br><br><br><br> **Jury Demanded** |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs, by and through their attorneys, The Law Offices of Al Hofeld, Jr., LLC, bring this action against defendants pursuant to 42 U. S. C. § 1983 for injuring a three-year-old child and her family, and state as follows:

2. On August 29, 2013, during a raid and search of plaintiffs' home Chicago police pointed and held a gun to the chest of a three-year-old little girl, plaintiff Davianna Simmons, while she was standing next to her grandmother in her grandmother's bedroom.

1

Pointed directly at her chest, the barrel of the gun was just six inches from her body. On information and belief, the gun was loaded. Little Davianna presented no apparent or actual threat whatsoever to the officers.

3.     Moments later, Davianna witnessed police violently shake her mother, plaintiff Aretha Simmons, and repeatedly slam her against the wall of the front foyer in their home, after they had visibly injured her right eye on the front porch moments earlier. Davianna also saw police point and hold a handgun to the head of her grandmother, plaintiff Emily Simmons. Throughout these events, officers were screaming and cursing violently and abusively at Davianna's mother and grandmother.

4.     Over a year later, Davianna still suffers severe, emotional and psychological distress and injury as a direct result of her exposure to defendants' violent and terrifying actions. Her lingering distress and other symptoms constitute scars on her psyche that may never fully heal.

5.     The defendant officers' actions toward Davianna and her family were totally unnecessary, unreasonable, and without any lawful justification.

### JURISDICTION AND VENUE

6.     This action arises under 42 U. S. C. § 1983. This Court has jurisdiction pursuant to 28 U. S. C. §§ 1331 and 1343.

7.     Venue is proper pursuant to 28 U. S. C. § 1391(b). The underlying events occurred within the Northern District of Illinois, defendant City of Chicago is a municipal corporation located within the district, and, on information and belief, all or most of the parties reside in the district.

### PARTIES

2

8.     At the time of all relevant events, Davianna Simmons was a three-year old little girl residing with her mother and maternal grandparents at 930 N. Keystone, Chicago, Illinois, 60651.

9.     The Simmons family has owned and resided in the same home at 930 N. Keystone for approximately 30 years.

10.     Plaintiff Aretha Simmons (or "Ms. Simmons") is Davianna's natural mother. On August 14, 2014, after a bench trial, Ms. Simmons was acquitted of all charges stemming from the August 29, 2013, raid and search of the Simmons family home. She has never been convicted of any crime.

11.     Plaintiff Emily Simmons (or "Mrs. Simmons") is Davianna's maternal grandmother. She has long been an active community leader in an organized and active block club in the family's Humboldt Park neighborhood. She was president of the block club for three years. She has never been convicted of any crime.

12.     Keith Simmons (or "Mr. Simmons") is Davianna's maternal grandfather. Mr. Simmons was honorably discharged from service in the United States Army. He is employed full-time with PACE, the Regional Transportation Agency's public transportation agency for the Chicago suburbs. He drives a van transporting the elderly. Mr. Simmons is a deacon at his church, Independence Seventh Day Adventist Church. He has never been convicted of any crime.

13.     Plaintiffs are African-American.

14.     Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

3

15.     Defendants Anthony M. Babicz (star 12652), J. L. Cwick, Steven L. Hefel (star 13074), Justin M. Homer (star 10979), Sergeant Brian J. Kinnane (star 1120), Michael R. Laurie (star 15108) John D. Okeefe (star 18418), W. A. Muzupappa (star 14845), Unit Commander James M. Roussell (star 273), Michael W. Suing (star 17006), John E. Wrigley (star 7179) and P. D. Young (star 16017) are Chicago police officers who participated in the search and raid of the Simmon's family home on August 29, 2013.  Sergeant Kinnane was in charge of the operation.  The officers engaged in excessive force and other misconduct against plaintiffs and refused to intervene to stop the same.

16.     As-yet unknown police officers are officers, not yet identified by name, who participated in the search and raid of the Simmons' family home and the misconduct against plaintiffs on August 29, 2013.

17.     On information and belief, all defendant officers and all officers who participated in the raid and search of plaintiffs' home on August 29, 2013, are white.  None were African-American.

18.     When the defendant officers searched and raided plaintiffs' home, used excessive force and committed other unlawful and unconstitutional acts against them as set forth below, they were at all times acting under color of law and within the scope of their employment as police officers for the City of Chicago.

## FACTS RELATING TO ALL COUNTS

19.     On the afternoon of August 29, 2013, the Chicago police obtained a warrant authorizing the search of Alonzo McFadden and the house at 930 N. Keystone in Chicago.  The complaint for the search warrant inaccurately stated that McFadden resided at 930 N. Keystone.  McFadden had never spent the night in the house.  On August 29, 2013,

4

McFadden was arrested outside the house and later convicted of drug and weapons charges. No drugs were found in the house. No drugs or weapons were found on the persons of any of the plaintiffs. The only weapons found in the house were Mr. Simmons' two, lawfully owned and registered responsibly-stored firearms. No plaintiff is a member of or involved with any street gang.

20. At approximately 6:00PM on August 29, Emily Simmons was standing in front of her dresser in her first-floor bedroom with her granddaughter, Davianna, standing next to her when, suddenly, she heard a booming male voice behind her scream, "freeze"! She turned around to find a large handgun pointed directly at her head, inches away, and four police officers in her bedroom. She said, "Oh, my God, what's going on?" The officers shouted back to her, "Shut Up!"

21. Defendant officers had not knocked and announced themselves; they illegally broke into the front and back doors of the home and surprised and shocked Mrs. Simmons and Davianna inside.

22. When Mrs. Simmons turned around in her bedroom, another of the four officers was pointing and holding a large handgun directly at Davianna, just six inches away from her chest.

23. Little Davianna presented absolutely no threat or apparent threat, objective or subjective, to the police officers standing in Mrs. Simmons' bedroom, to those participating in the search and raid, or to anyone else.

24. After gasping in shock, Emily Simmons pleaded with the officers present in her bedroom, "Why do you have a gun on my granddaughter? She's a three-year-old child. You see her hands. She doesn't have anything." The officers refused to remove the gun. They

5

screamed at Mrs. Simmons to "shut up" and continued pointing the gun directly at Davianna's chest.

25.     Mrs. Simmons then repeated her plea, shouting, "get the gun off the baby." Mrs. Simmons sobbed through her screams. Davianna saw her grandmother sobbing.

26.     Next, the four officers ordered Mrs. Simmons and Davianna out of the bedroom, into the adjacent living room, to sit on the living room couch and not to move. With guns still trained directly on Mrs. Simmons and little Davianna, the officers walked Mrs. Simmons and Davianna into the living room and to the couch, where the two sat down and waited.

27.     Simultaneously, defendant officers O'Keefe and Suing seized and handcuffed Aretha Simmons on the front porch outside of the home, handcuffed her and pushed her inside through the open front door into the foyer.

28.     At that point, Ms. Simmons witnessed the officers pointing guns at her mother and her daughter as the officers were walking them into the living room from the bedroom. Ms. Simmons pleaded with the police officers, "can you please get the gun off of my daughter?" and "you shouldn't put a gun on my baby."

29.     Even though Davianna presented no threat to the officers, the officers did not take the gun off of Davianna or tell the officer who was pointing the gun at her to stop.

30.     Instead, the officer holding Ms. Simmons, believed to be defendant officer Suing, reacted by screaming at her repeatedly to "shut up" and, then, by grabbing and shaking her whole upper body forcefully and slamming her repeatedly against the wall in the foyer. Ms. Simmons was handcuffed when officer Suing did this. Ms. Simmons sustained injuries as a result of the shaking and slamming. She did not resist arrest.

31.     Davianna saw and heard officer Suing shouting at her mother, shaking her and slamming her into the wall. Davianna was approximately 15 feet from her mother when this occurred. The couch in the living room of the small, shotgun-style home is directly across from the front foyer.

32.     When she was handcuffed moments before, Ms. Simmons was seated on a chair on the front porch when officers O'Keefe and Suing approached her. She did not resist arrest. Officer Suing grabbed her, handcuffed her, and pushed her down into a seated position on the chair. Then, after he handcuffed her, officer Suing put his hand on the back of Ms. Simmons' neck and forcefully directed and pushed her face directly into a corner of the low-rise, concrete wall lining the edge of the front porch, causing serious injury to her eye. He then grabbed her harm, pulled her out of the chair and pushed her through the open front door.

33.     At no time did Ms. Simmons do or say anything to resist arrest.

34.     Defendant officers also intentionally damaged, destroyed or converted the real and personal property of plaintiffs, a poor family. They destroyed the front and back doors to gain entry to plaintiffs' home, instead of knocking and announcing. They broke tables, chairs, dressers, a headboard and box spring mattress, candle holders, and a flat screen TV. Finally, they converted jewelry from Mrs. Simmons, including a bracelet, three rings, and a gold chain. They converted $400 cash from Mrs. Simmons and $300 cash from Ms. Simmons. They confiscated and have not returned Mr. Simmons' lawfully owned and registered firearms.

### *Davianna's Injuries*

35.     The defendant police officers' terrorizing conduct toward Davianna and in her presence caused her immediate, severe and lasting emotional and psychological distress and injury.

7

36.     Prior to August 29, 2013, Davianna was a "happy-go-lucky" girl in a loving family who had not suffered any emotional or psychological trauma in her life. That changed dramatically on August 29, 2013, with defendants' actions.

37.     Every night since the August 29 raid and search, Davianna visibly and audibly has nightmares. She springs up in the middle of the night and looks around, crying and screaming, "the police are coming, the police are here!" or "they're here!" She is then awake for several hours, unable to go back to sleep. Sometimes, after waking up from these nightmares she appears to be in another world and does not recognize members of her family or her surroundings. Often, her grandfather, Mr. Simmons, is the only one who is able to comfort her.

38.     Ever since the raid, every night before she goes to bed Davianna asks her grandmother, "you're not going to let anything happen to me, right?" or "are you going to let the police get me?"

39.     Every night since the raid, Davianna insists on climbing into bed with her grandparents. Before the raid, Davianna always slept with her mother in her mother's room.

40.     Davianna exhibited none of this behavior prior to August 29, 2013.

41.     Since defendants raided her home, whenever Davianna sees Chicago police officers, she screams and runs. If she is on the family's front porch and sees a police car going by, she becomes scared, runs in the house and upstairs. Whenever unfamiliar persons come over to the family's house, Davianna asks her mother or grandparents if they are the police or she assumes they are the police and she becomes scared. Whenever Davianna is asked to remember and talk about the events of August 29, 2013, she physically shrinks back and looks scared.

42.     Davianna continues to experience and exhibit, unabated, these and other signs of severe emotional and psychological trauma and distress.

43.     Though her family has limited financial means and cannot afford adequate psychological care for her, Davianna is expected to require high quality, long-term, psychological care and counseling in order to cope with the long-term injuries caused by defendants' terrorizing actions.

### *Defendant City of Chicago's Policies, Practices and Customs Caused Plaintiffs' Injuries*

44.     The defendant officers' unlawful conduct toward and in the presence of little Davianna and her family was directly caused by the Chicago Police Department ("CPD") and City of Chicago policies, widespread practices, and customs with respect to officers' use of force and excessive force. They were undertaken pursuant to defendant City of Chicago's pervasive, long-standing, practices and customs regarding the use of excessive and unreasonable force.

45.     In particular, defendant City of Chicago has a pervasive practice and custom of failing to adequately train, supervise, control, discipline and dismiss its officers concerning the use of excessive force. Defendant City of Chicago also has a policy of inadequately reporting, reviewing and investigating use of force and excessive force incidents.

46.     Moreover, defendant City of Chicago has long-standing, pervasive practices and customs of (1) failing to adequately train, supervise, control, discipline and dismiss its officers regarding their duties relating to the use of force and excessive force on and in the presence of young children and (2) inadequately reporting, reviewing and investigating use of force and excessive force incidents involving young children. The City's widespread practices

directly encouraged, authorized and caused defendant officers' conduct toward little Davianna and her family.

47.     Further, defendant officers' conduct toward and in the presence of little Davianna was undertaken pursuant to defendant City of Chicago's long-standing, persistent practice and custom of failing to have any adequate policy concerning the use of force and excessive force on, in the presence of, and in situations involving young children. This is a recurring situation frequently encountered by officers. This failure directly encouraged, authorized and caused defendant officers' conduct toward Davianna and her family.

48.     Defendant officers' supervisors Sergeant Kinnane and Unit Commander Roussel chose not to control or intervene in the actions of their subordinates during the raid and search of plaintiffs' home and instead approved of, condoned and participated in the misconduct toward and in the presence of little Davianna and her family.

49.     On information and belief, defendant officers and other Chicago police officers have engaged in and continue to engage in a pattern of using excessive force similar to the misconduct they engaged in against plaintiffs. And the City has persistently failed respond, i.e., to identify, scrutinize, and take adequate corrective action concerning officers who repeatedly engage in a pattern of using excessive force and other misconduct.

50.     Moreover, defendant officers' conduct was undertaken pursuant to and as the direct result of the Defendant City of Chicago's pervasive, long-standing practice and custom of condoning and authorizing CPD's pattern and practice of sending all-white teams of officers into neighborhoods, like plaintiffs' neighborhood of Humboldt Park, that are predominantly African-American and/or non-white Hispanic, which, CPD knows, increases racial tensions and

the likelihood that officers will use excessive force in already-tense situations, like the raid and search of plaintiffs' home.

51.     Moreover, defendant officers' conduct was undertaken pursuant to and as the direct result of the Defendant City of Chicago's pervasive, long-standing practice and custom of condoning and authorizing CPD officers' pattern and practice of more frequently and more egregiously using excessive force against African-Americans and Hispanics.

52.     By failing to adequately review, discipline and dismiss officers for prior instances of misconduct similar to the misconduct against plaintiffs, the City leads police officers to believe with confidence that their actions will not be scrutinized, investigated or disciplined by CPD or Independent Police Review Authority ("IPRA"). This directly encourages and authorizes future abuses, like the ones involving plaintiffs, giving officers license to use excessive force when they want.

53.     Final city policy-makers are aware of, condone and facilitate, by their inaction, a "code of silence" within the Chicago Police Department, which further serves to ratify officers' misconduct and authorize it for the future. Police officers routinely fail to report instances of police misconduct, lie to protect each other from punishment and go unpunished for doing so. The defendant officers' conduct toward and in the presence of little Davianna, including their failure to intervene, was the direct result of the City of Chicago's code of silence regarding the use excessive force, including excessive force involving children.

54.     By means of its pervasive practices and failures to remedy its officers use of excessive force, including excessive force against or the presence of children, defendant City of Chicago has manifested and manifests deliberate indifferent to the deprivation of plaintiffs' constitutional rights.

55.     These practices and customs directly caused the severe injuries to little Davianna as well as the injuries to her mother, grandmother and grandfather.

**COUNT I – EXCESSIVE FORCE – 42 U. S. C. § 1983 (Davianna Simmons)**

56.     Plaintiffs incorporate paragraphs 1 – 55 above. Plaintiff Aretha Simmons, for and on behalf of her daughter Davianna, asserts this claim, pursuant to 42 U. S. C. § 1983, against defendants.

57.     Defendant officers' conduct toward little Davianna Simmons constituted excessive force, in violation of her rights under the Fourth and Fourteenth Amendments to the U. S. Constitution. Under the circumstances, defendants' use of force against and in the presence of a young child was totally unnecessary, unreasonable and unjustifiable.

58.     Defendant officers failed to intervene to stop it.

59.     Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

60.     Defendants' misconduct was undertaken with malice, willfulness, and recklessness indifference to the rights of others.

61.     The defendant officers' misconduct was undertaken pursuant to and as the direct result of the Defendant City of Chicago's policies, pervasive, long-standing practices and customs, as detailed above, such that defendant City of Chicago is liable for defendant officers' misconduct toward little Davianna.

62.     As the direct and proximate result of defendant officers' misconduct, plaintiff Davianna Simmons has suffered and continues to suffer severe, long-term emotional and mental distress and trauma, including lasting or permanent psychological injury.

**COUNT II – FAILURE TO INTERVENE – 42 U. S. C. § 1983 (Davianna Simmons)**

63.     Plaintiffs incorporate paragraphs 1-62 above.  Plaintiff Aretha Simmons, for and on behalf of her daughter Davianna, asserts this claim, pursuant to 42 U. S. C. § 1983, against defendants.

64.     One or more defendant officers had reasonable opportunities to prevent or stop the violations of little Davianna's constitutional rights but stood by and failed to take any action.

65.     Defendant officers' actions were undertaken intentionally, with malice and reckless indifference to plaintiff's constitutional rights.

66.     As set forth above, the misconduct described in this Count was undertaken pursuant to the policy, long-standing and pervasive practices and customs of defendant City of Chicago, such that defendant City of Chicago is also liable for defendant officers' failure to intervene.

67.     As the direct and proximate result of defendant officers' misconduct, plaintiff Davianna Simmons has suffered and continues to suffer severe, long-term emotional and mental distress and trauma, including lasting or permanent psychological injury.

### COUNT III – EXCESSIVE FORCE – 42 U. S. C. § 1983 (Aretha Simmons)

68.     Plaintiff Aretha Simmons incorporates paragraphs 1 – 34 and 44-55 above and asserts this claim against defendants.

69.     The conduct of defendant officers O'Keefe and Suing toward plaintiff Aretha Simmons constituted excessive force against Ms. Simmons, in violation of her rights under the Fourth and Fourteenth Amendments to the U. S. Constitution.  Under the circumstances, defendants' use of force was unnecessary, unreasonable and unjustifiable.

70.     Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

71.     Defendants' misconduct was undertaken with malice, willfulness, and recklessness indifference to the rights of others.

72.     As set forth above, the misconduct described in this Count was undertaken pursuant to the policy, long-standing and pervasive practices and customs of defendant City of Chicago, such that defendant City of Chicago is also liable for officer O'Keefe's and Suing's excessive force.

73.     As the direct and proximate result of defendant officers' misconduct, plaintiff Aretha Simmons suffered physical injuries and serious emotional distress that resulted in sleep deprivation, depression and other problems.

### COUNT IV – 42 U. S. C. § 1983 - Unconstitutional Seizure of Property

74.     Plaintiffs Emily Simmons, Keith Simmons and Aretha Simmons incorporate paragraphs 1 – 34 and 44-55 above and assert this claim against defendants.

75.     As set forth above, defendant officers damaged plaintiffs' real and personal property; they damaged plaintiffs' property when they forcibly entered plaintiffs' home with a search warrant, in violation of the knock-and-announce rule of the Fourth Amendment; they converted Mrs. Simmons' personal jewelry and cash for their personal use; they converted cash belonging to Ms. Simmons; and they confiscated and did not return Mr. Simmons' two, lawfully owned and registered firearms.  Defendants took these actions without any lawful basis and without ever returning plaintiffs' property to them or paying for damages they caused.

76.     Defendant officers' actions an unreasonable seizure of plaintiffs' property, in violation of plaintiffs' rights under the Fourth Amendment and Fourteenth Amendments to the

U. S. Constitution; a deprivation of property without due process of law, in violation of plaintiffs' rights under the Fourteenth Amendment; and a taking of property for non-public use and without compensation, in violation of plaintiffs' rights under the Fifth and Fourteenth Amendments.

77.     Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful, malicious and reckless indifference to plaintiff's constitutional rights.

78.     Defendants' misconduct was undertaken with malice, willfulness, and recklessness indifference to the rights of others.

79.     As a result of defendant officers' misconduct described in this Count, plaintiffs have suffered injury, including emotional distress and financial harm.

### COUNT V - 42 U. S. C. § 1983 – Equal Protection

80.     Plaintiffs incorporate paragraphs 1 – 55 above.  Plaintiffs Aretha Simmons, for herself and on behalf of plaintiff Davianna Simmons, assert this claim, pursuant to 42 U. S. C. § 1983, against defendants.

81.     Defendant officers' use of excessive force against plaintiffs violated the Constitution's guarantee to plaintiffs of the equal protection of the law under the Fourth and Fourteenth Amendments.

82.     Defendant officers deploy excessive force against African-American families and persons far more often and more egregiously than they do against Caucasian families and persons.

83.     Defendants would not have acted in the same manner toward plaintiffs on August 29, 2013 if plaintiffs' family had been white.

84. Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

85. Defendants' misconduct was undertaken with malice, willfulness, and recklessness indifference to the rights of others.

86. The defendant officers' misconduct was undertaken pursuant to and as the direct result of the Defendant City of Chicago's policies, pervasive, long-standing practices and customs, including but not limited to the City's policy and custom of condoning and authorizing (1) CPD's pattern and practice of sending all-white teams of officers into neighborhoods, like plaintiffs' neighborhood of Humboldt Park, that are predominantly African-American and/or non-white Hispanic, which increases racial tensions and the likelihood that officers will use excessive force; and (2) CPD officers' pattern and practice of more frequently and more egregiously using excessive force against African-Americans and Hispanics. Consequently, defendant City of Chicago is liable for defendant officers' misconduct toward plaintiffs.

87. As the direct and proximate result of defendant officers' misconduct and the City's polices, plaintiffs have suffered and continue to physical and psychological injuries and severe distress.

## COUNT VI - PUNITIVE DAMAGES

88. Plaintiffs incorporate paragraphs 1 – 67 and 80-87 above. Plaintiff Aretha Simmons, for and on behalf of her daughter Davianna Simmons, brings this claim against defendants.

89. Defendants' shocking actions of pointing and training a loaded gun on a three-year-old little girl, violently refusing her mother and grandmother's reasonable requests to take the gun off of her, and responding to their requests with excessive force against her mother

in front of her eyes, constituted abuses of power and authority. Defendants' actions – including their inaction in failing to intervene to request that fellow officers stop using excessive force - were directed toward a three-year-old child. Her sensitivity and vulnerability to such trauma-inducing violence were known to defendants.

90. Defendants' conduct toward little Davianna were undertaken with willful and wanton disregard for the rights of others. Defendant officers acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of little Davianna and other persons were involved. Defendants acted with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard of the rights of others.

91. Defendants' conduct was undertaken pursuant to, and is part of a long-standing and widespread pattern and practice of similar Chicago police officer misconduct consisting of the unjustifiable use of excessive force on or in the presence of young children.

92. In light of the character of defendants' acts toward Davianna Simmons and the lasting or permanent psychological injury defendants' conduct has caused her, defendants' conduct merits an award of punitive damages to plaintiff Davianna Simmons. Such award shall be used for the future, long-term psychological care and counseling of Davianna.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court enter judgment in their favor and against defendants for:

      a.     Compensatory damages;

      b.     Punitive damages;

      c.     Reasonable attorney's fees and litigation costs and expenses;

      d.      Appropriate equitable relief; and

      e.      Such other or further relief as the Court deems appropriate.


                Respectfully submitted,


                s/Al Hofeld, Jr.
                Al Hofeld, Jr.


Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
And the Social Justice Project, Inc.,
1525 East 53rd Street, Suite 832
Chicago, Illinois 60615
(773) 241-5844
(773) 241-5845 (FAX)


## JURY DEMAND

      Plaintiffs demand trial by jury.

                s/Al Hofeld, Jr.
                Al Hofeld, Jr.


## NOTICE OF LIEN

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

                s/Al Hofeld, Jr.
                Al Hofeld, Jr.