# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ARETHA SIMMONS, et al.,       )
       )
       Plaintiffs,       )
       )
       vs.       )       Case No. 14 C 9042
       )
CITY OF CHICAGO, et al.,       )
       )
       Defendants.       )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case, several members of the Simmons family, allege that on August 29, 2013, a number of Chicago police officers executing a search warrant used excessive force by pointing a gun at three-year-old Davianna Simmons and her grandmother Emily Simmons and by using unreasonable physical force against Davianna's mother Aretha Simmons, and unconstitutionally took the property of Aretha, Keith, and Emily Simmons. Aretha Simmons was arrested on the porch of the home; she was prosecuted and was eventually acquitted. She does not assert any claims challenging her arrest or prosecution. Alonzo McFadden, allegedly Aretha's boyfriend, was arrested in front of the home before the officers entered, but he is not a plaintiff in this case and has not separately sued to challenge his arrest or prosecution.

In addition to their claims against a number of police officers for excessive force and unlawful seizure, the plaintiffs assert a *Monell* claim or claims against the City of Chicago, alleging that the City had policies of failing to supervise police officers; failing

to investigate and discipline officers for misconduct; and maintaining a "code of silence" about officer misconduct. These policies, plaintiffs contend, caused the constitutional violations that they suffered.

In this order, the Court rules on the parties' motions *in limine*. The Court expects and directs counsel to advise witnesses in advance of their testimony of its rulings on these motions so that they are not violated. The Court also notes that a party that has succeeded in excluding evidence may, of course, open the door to its admissibility. If an opposing party believes this has occurred, it must raise the issue outside the jury's presence and seek permission before introducing evidence the Court has excluded.

The Court will address first several of plaintiffs' motions that concern the scope of properly admissible evidence surrounding the events of August 29, 2013. The Court will then address all of defendants' motions *in limine* and will return to address the remainder of plaintiffs' motions *in limine*. The defendants have also moved to bifurcate the individual claims from the *Monell* claims for trial; the Court will rule on that by way of a separate order.

**A.    Plaintiffs' motions 1 through 6 and motion 9**

**1, 4 & 5.   Silver purse and drug paraphernalia; relationship between Aretha Simmons and Alonzo McFadden; arrest and prosecution of Aretha Simmons**

Plaintiffs' motions *in limine* 1, 4, and 5 concern the admissibility of evidence surrounding the arrest and prosecution of plaintiff Aretha Simmons, her relationship with Alonzo McFadden, and certain items seized from Ms. Simmons. Some background is necessary. Police obtained a warrant authorizing the search of McFadden and the premises at 930 N. Keystone Avenue and the seizure of firearms. The warrant and

application reference information obtained from a "J. Doe" informant about McFadden and the Keystone residence. Specifically, the informant said that on August 28, 2013, he/she had observed McFadden at the residence with a loaded 9 mm Glock pistol with a defaced serial number. The informant stated that he/she knew McFadden to be a member of a particular street gang. The officer who completed the complaint for a search warrant stated, among other things, that he had verified that McFadden was a convicted felon, most recently convicted on a charge of unlawful use of a weapon by a felon. As indicated, the warrant authorized a search of McFadden and the Keystone residence for firearms that had been used in the commission of, or constituted evidence of, the offense of unlawful use of a weapon by a felon.

The defendant officers, and perhaps others, went to the Keystone residence the next day to execute the warrant. Police reports reflect that during pre-execution surveillance, officers observed McFadden engage in several hand-to-hand transactions with others in which he accepted currency in exchange for items that he retrieved from a plastic baggie taken from a silver purse on the porch of the residence. Police officers took McFadden into custody on the sidewalk or walkway in front of the home; he evidently had no firearm or other contraband on his person. A key to the residence was recovered from his person. Aretha Simmons was on the front porch; it is claimed that she grabbed the silver purse from a chair on the porch and sat on another chair. Two officers confronted her and took the purse; it contained a loaded 9 mm Glock pistol with the serial number defaced. It also contained a plastic baggie that in turn contained 21 zip lock baggies of suspected heroin and 3 zip lock baggies of suspected cannabis. Ms. Simmons was taken into custody. The officers on the scene do not appear to contend

3

that either McFadden or Ms. Simmons resisted in any way.

Other officers entered the house.  There is deposition testimony by at least one officer that a code was called out from the porch indicating that a gun had been found.  Elsewhere in the house, officer found a loaded .38 caliber revolver, a loaded 12 gauge shotgun, a scale, and narcotics-type packaging.

About a half hour after the execution of the warrant, Keith Simmons arrived on the scene.  Police reports reflect that he told officers that his daughter (Aretha Simmons) had been dating McFadden; McFadden spent a good deal of time at the Keystone residence; Mr. Simmons suspected McFadden of criminal activity; and he had "tried to warn my daughter about him."

McFadden and Aretha Simmons were taken to a police station.  Police reports reflect that McFadden gave officers access to his cellular phone, which contained photographs showing him sitting on the porch of the Keystone residence and being hugged by Emily Simmons, Aretha Simmons's mother.  He also is claimed to have said at the police station that the Glock wasn't his and that someone had tried to sell it to him but he refused because the price was too high.  Aretha Simmons is claimed to have said at the police station that the gun belonged to McFadden and that he kept it in the purse while he was working because "he's into it with some people and doesn't want to be robbed."

Aretha Simmons was charged with unlawful possession of a firearm with a defaced serial number (as well as possession without a valid firearm owner's identification card) and possession of controlled substances and cannabis.  She was found not guilty after a bench trial.  McFadden was charged with possession of a

controlled substance with intent to deliver and unlawful use of a weapon by a felon. He either pled guilty or was found guilty. It does not appear that anyone was charged with criminal offenses arising from the seizure of the .38 revolver, the shotgun, or the scale and alleged drug packaging found in the Keystone residence.

In the final pretrial order in the present case, plaintiffs describe their claims against the individual defendants as follows:

> one or more defendant officers used excessive force by allegedly pointing a gun toward Davianna Simmons and Emily Simmons, and by using excessive physical force against Aretha Simmons, unconstitutionally took the property of Plaintiffs Emily Simmons, Keith Simmons and Aretha Simmons, and failed to intervene when one more of the other defendants officers used excessive force or unconstitutionally seized property.

Final Pretrial Order at 2. The excessive force claim involves: (1) how the police handled Aretha Simmons after taking her into custody and bringing her into the home, and (2) pointing guns at Emily Simmons and Davianna Simmons (who was three years old at the time), allegedly without a good reason. As the Court understands the claim for unlawful seizure of property, plaintiffs do not contend that the entry into the home or search of the home were unlawful. Rather, they challenge the manner of the search. Specifically, they allege that defendants unreasonably destroyed or damaged property while entering and searching the home and that they converted to their own use jewelry and cash belonging to the Simmonses. *See* Compl. ¶ 34.

In their motions *in limine* 1, 4, and 5, plaintiffs seek exclusion of all or at least most of the evidence discussed above as irrelevant or unfairly prejudicial. They argue that Alonzo McFadden is not a party and that evidence of his bad acts will unfairly prejudice them; they are not challenging the legality of the arrest or prosecution of Aretha Simmons; and because defendants contend that they used no force on Ms.

Simmons, the events that preceded the alleged use of force are irrelevant. Plaintiffs also argue that information not known to the officers at the time of the incident is irrelevant. Plaintiffs' contention is that "the only factual background" that the jury appropriately should hear is "that Defendant Officers were present on the Simmons' property on August 29, 2013, and that, while there, officers handcuffed Aretha Simmons and conducted a search of the house." Pls.' Mots. In Limine at 3. The rest, plaintiffs argue, does not make more or less likely any matter the jury will have to decide.

Defendants intend to offer all of the evidence summarized above. They argue that it is important to be able to explain why they were at the residence; why they searched it in the way they did; why their guns were drawn; and so on. Defendants also wish to introduce mug shots taken after Ms. Simmons's arrest and testimony from medical personnel who examined her post-arrest to attempt to rebut her claims regarding the nature of the force used against her. More generally, defendants contend that "[p]laintiffs want to sanitize this case and not allow the jury to have a complete understanding of what happened . . ., the reason why the police came to the house, the reason why the police had their guns drawn upon entry to the home, and the potential reason why plaintiff did, in fact, actively participate in the possession of a defaced gun and drugs." Defs.' Resp. to Pls.' Mots. In Limine at 2.

The Court's conclusion is that it is not an all-or-nothing proposition. Some of the evidence in question is relevant and admissible, and some is irrelevant or unfairly prejudicial and therefore inadmissible. In ruling, the Court thinks it important to keep a few points in mind. First, defendants' contention that the law requires telling "the full story of events," Defs.' Resp. to Pls.' Mots. In Limine at 9, basically amounts to throwing

the rules of evidence out the window. This, of course, is inappropriate. Evidence must be relevant to be admissible. Fed. R. Evid. 402. The definition of relevance is not whether the evidence is part of "the full story," but rather whether it has any tendency to make more or less probable "a fact that is of consequence in determining the action." *Id.* 401.

Second, the opposite side of this coin is that plaintiffs' approach essentially would require the jury to view the case with blinders on. If the only background evidence the jury were permitted to hear is that the officers were there and handcuffed Aretha Simmons, the jury would be left in the dark regarding why the officers were conducting a search and why they did it in the manner they contend (or why, if they did it as plaintiffs contend, it might have been reasonable). Among other things, a jury might conclude from this that the officers had no basis to enter the house and that they had no reason to handcuff Ms. Simmons. That could unfairly skew the jury's view of the events surrounding the alleged use of force and search of the home.

The Court notes that one of the factors the law says may be relevant in deciding whether force is unreasonable and therefore excessive is the nature of the crime at issue. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). In this case the officers were authorized to search the premises and seize evidence relevant to possession of a firearm by a felon. The Court does not mean by this to suggest that this would justify roughing up Ms. Simmons—it would not—but the nature of the crimes being investigated has an undeniable bearing on the jury's determination of the officers' justification for acting as they did in their interaction with the Simmonses and their search of the house.

On the other hand, the Court agrees with plaintiffs that evidence acquired after the fact is not relevant, or if relevant it has only minimal probative value far outweighed by its potential for unfair prejudice. In addition, the jury will not be called upon to determine the legal propriety of prosecution of Aretha Simmons or Alonzo McFadden; there are no "wrongful conviction"-type claims in this case.

With these considerations in mind, the Court concludes that the evidence on the following points is relevant, not unfairly prejudicial, and admissible:

- the contents of the warrant application and warrant;

- what the officers observed Mr. McFadden doing before they approached the residence;

- taking Mr. McFadden into custody and what was (and was not) on his person;

- what the officers observed Aretha Simmons do;

- taking Ms. Simmons into custody and what they found in the purse;

- the search of the house and recovery of two firearms;

- their arrest of Ms. Simmons and the basis for it; and

- evidence of Ms. Simmons's physical condition after the arrest.

The Court concludes that evidence on the following points is irrelevant, unfairly prejudicial in a way that significantly exceeds its unfair probative value, or both, and therefore inadmissible:

- the charging and prosecution of Mr. McFadden;

- statements made by Mr. McFadden post-arrest;

- statements made by Ms. Simmons post-arrest;

- statements made by Keith Simmons after execution of the warrant;

8

- the recovery of narcotics packaging and a scale from the house; and

- lab reports regarding narcotics seized from the purse.

The Court believes that this completely resolves plaintiffs' motions 1, 4, and 5. If this is incorrect, the parties should so advise the Court at the next status hearing.

### 2. Participation of defendants on a "gun team"

This evidence is irrelevant and unfairly prejudicial in a way that far outweighs whatever minuscule probative value it might be claimed to have. It is excluded.

### 3. "Bad neighborhood" / "dangerous neighborhood" evidence

This evidence is likewise excluded as irrelevant and unfairly prejudicial. The defendants entered the home not because it was in a bad neighborhood but because they had a warrant, and they claim to have acted as they did because of what the warrant indicated and because of what they observed in front of and in the home. In addition, plaintiffs are not offering the "relocation" opinion by Dr. Karnik, which defendants suggested would cut against excluding this evidence.

### 6. Arrest and prosecution of Alonzo McFadden

Evidence regarding the circumstances of the arrest of Alonzo McFadden is relevant for the reasons discussed with respect to plaintiffs' motions *in limine* 1, 4, and 5. By contrast, evidence regarding his charging and prosecution is irrelevant and unfairly prejudicial in a way that significantly exceeds its claimed probative value in terms of "lending credibility" to the officers' testimony (as defendants contended at the hearing on the motions).

### 9. Alcohol consumption by Emily Simmons

This evidence is excluded under Rules 402 and 403. Defendants have offered

no evidentiary foundation for a level of alcohol use that might impair Emily Simmons's credibility or ability to recall.

The Court will address the remainder of plaintiffs' motions *in limine* after addressing defendants' motions.

**B.    Defendants' motions**

**1.    Police department rules and regulations**

The Court denies defendants' request for a blanket exclusion of evidence relating to compliance with police department general orders, rules, and regulations. Such evidence may be relevant and admissible on the question of intent, and it likewise may be admissible on the question of punitive damages. *See generally Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). Defendants will have to assert this objection on an item-by-item basis at trial.

**2.    Failure to discipline defendant officers for conduct in this case**

Evidence that the defendant officers were not disciplined for their actions in this case is excluded. On the claims against the individual officers, this evidence is irrelevant regarding whether an underlying constitutional violation was committed. Plaintiffs also contend the evidence is relevant and admissible on the *Monell* claim. But no complaint was made against the officers; plaintiffs' contention is that the police department failed to act after this lawsuit was filed. Given that background, this evidence has minimal, if any, probative value regarding the *Monell* claim, and plaintiffs have plenty of other evidence to offer in support of their *Monell* failure-to-discipline contentions. This evidence is excluded under Federal Rule of Evidence 403 on the *Monell* claim.

### 3. Mentioning during jury selection the amount of damages requested

The Court will be conducting the voir dire of the prospective jurors in this case, so there will be no occasion for counsel to attempt to advance their respective theories of the case or for plaintiffs' counsel to identify the dollar amount they will ask the jury to award. If counsel are permitted to ask any questions during the voir dire, they are precluded from discussing the dollar amounts they will request.

### 4. "Motion to bar plaintiff from making an improper opening statement"

Defendants' request to preclude an improper opening statement by plaintiffs is denied, because it is basically a request for an order to follow the rules, which is superfluous and should be unnecessary. The Court admonishes counsel for both sides, however, that opening statements properly include only a description of what counsel believe the evidence will show, not a mini closing argument. If any party believes that opposing counsel is making improper argument during opening, that party should object contemporaneously, and the Court will enforce the rules as appropriate.

### 5. Complaints / lawsuits against defendants and police witnesses

Defendants seek to exclude any evidence regarding prior complaints against the defendant officers and non-defendant officer witnesses, arguing that it is inadmissible under Federal Rule of Evidence 404(b). In plaintiffs' response and at the hearing on the motions *in limine*, plaintiffs' counsel made reference to two specific matters, the "White" and "Nash" matters, arguing that these are relevant to show intent in connection with the incident in the present case. Both cases involved allegations of pointing weapons at minors. The White matter, however, was a lawsuit that resulted in a jury verdict for the police officer(s). It is on appeal, and plaintiffs believe it is still relevant because, they

contend, important evidence was excluded at the trial. The Court concludes that even if the White matter might be otherwise admissible under Rule 404(b), the waste of time involved in explaining the trial, the appeal, and the purportedly excluded evidence far outweighs the probative value of the evidence. The Court excludes this evidence under Rule 403. The Court does not know enough about the details of the Nash matter to make a ruling at this point regarding whether it is admissible under Rules 404(b) and 403. Further input from the parties will be required.

Plaintiffs also wish to offer, as part of their *Monell* case against the City, statistical evidence regarding the numbers of complaints against the defendant officers (and perhaps some non-defendant officer witnesses) and the absence of discipline or other corrective action. This does not make this sort of statistical evidence separately admissible on the claims against the defendant officers. The Court concludes that, on the individual claims, plaintiffs have not established the admissibility of this evidence under Rule 404(b). On the other hand, defendants have not persuasively argued that plaintiffs' statistical evidence is irrelevant on the *Monell* claims or that it is inadmissible on those claims under Rule 403. The fact that some of plaintiffs' statistical case includes statistics concerning officers involved in the events in the present case does not tilt the balance against admission with regard to the *Monell* claims.

### 6.    Evidence of other police misconduct / police shootings

Evidence regarding the shootings of Laquan McDonald, Cedrick Chatman, Christian Green, and Lamar Harris by Chicago police officers not involved in this case is excluded under Rule 403. Admitting any of that evidence would make this case devolve into a series of mini-trials that would significantly divert attention from the issues the jury

will have to decide.  In addition, these events are not particularly similar, as the present case did not involve an actual shooting, and the child-plaintiff in this case was three years old at the time of the incident, whereas the others were teenagers.

**7.      Appointment of new police superintendent and investigative agencies**

Plaintiffs have disavowed any intention to offer evidence of the appointment of a new superintendent of police or the establishment of new investigative agencies to review claims of police misconduct.  The Court grants defendants' motion *in limine* seven concerning such evidence.

**8.      "Send a message to the City" / "punish the City"**

The City of Chicago cannot be held liable for punitive damages, so any argument that the jury should punish the City would be improper.  In terms of arguments about "sending a message," the Court agrees with plaintiffs that they may properly "ask the jury to 'send a message' by awarding full compensatory damages" against the City. *See Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 820 (N.D. Ill. 2010).  The Court overrules defendants' motion to that extent.

**9.      Reference to indemnification by City**

Defendants expressly disavowed at the August 10 hearing any intention to offer evidence or make argument regarding police officers' modest pay, financial hardship, onerousness of a verdict, or other similar arguments.  Given that express undertaking, the Court bars any evidence or argument regarding indemnification of the individual defendants by the City for compensatory damages or otherwise.

**10. Officers' lawyers as lawyers for the City**

The Court grants this motion. Plaintiffs may not refer to the officers for the individual defendants as working for the City.

**11. Reference to how the City disciplines police officers**

This motion is denied; evidence regarding how the City disciplines police officers is quite obviously relevant and admissible on plaintiffs' *Monell* claims. Plaintiffs have expressly committed not to offer such evidence in a bifurcated trial against the individual officers only, so it is excluded if there is such a trial. Just as any party may open the door to otherwise excluded evidence at trial, the officer defendants may open the door to admission of evidence on this point if, among other things, they introduce evidence or argue that they were not disciplined in connection with the incident in this case.

**12. Police personnel being paid their salary to testify**

This motion is granted, but plaintiffs may, as they argue, bring out evidence regarding training of police officers on testifying in court, the frequency of their testimony, and the fact that it is a routine part of their jobs.

**13. "Plaintiffs have waited a long time for their day in court"**

Plaintiffs do not oppose this motion, so it is granted.

**14. Lay opinion testimony regarding injuries**

Plaintiffs (and perhaps other witnesses) may properly testify regarding plaintiffs' symptoms, when they began, their duration, and so on, and they may properly testify regarding their own perceptions. Lay witnesses, however, may not self-diagnose and may not testify regarding what was communicated to them by medical personnel regarding their conditions or any diagnosis.

**15.** **"Racist police officers"**

The Court denies this motion to the extent defendants seek to bar plaintiffs from introducing comparative evidence regarding discipline of police officers when the complainant is a member of a racial minority. The motion is otherwise too general to rule on in a blanket manner prior to trial. Defendants should object to any evidence or argument that they believe is improper, and they may renew this motion if they wish before closing arguments.

**16.** **Outcome of Aretha Simmons criminal charges**

Earlier in this order, the Court denied plaintiffs' motion to bar evidence regarding the arrest and charging of Aretha Simmons in connection with the incident at issue. Defendants acknowledged at the hearing, and the Court now reaffirms, that if that evidence comes in, it opens the door to evidence that Ms. Simmons was acquitted of the charges, to avoid misleading the jury.

**17.** **Other negative encounters between plaintiffs and police officers**

Plaintiffs do not oppose this motion, so the Court grants it.

**18.** **Testimony by Davianna Simmons**

Based on the Court's in-person observation of Davianna Simmons's testimony during her deposition and its review of the relevant law, the Court finds that she is competent to testify and thus permits the playing of her video deposition at trial. She sufficiently expressed an understanding of the need to tell the truth (including what "the truth" means), and her memory of the events is sufficient to meet the competency threshold. Her memory is not perfect, of course, but the appropriate way to deal with that is by testing it on cross-examination, as defense counsel did during the deposition.

The Court rejects defendants' contention that Davianna was unduly influenced by anyone or that her memory has been enhanced by others; as plaintiffs argue, there is no evidence to support that.

**19.    Participation by plaintiffs in CAPS / neighborhood watch programs**

Plaintiffs do not oppose exclusion of this evidence, so the Court bars it, with the caveat that the door may be opened by, among other matters, evidence or questioning regarding bias against the police.

**20.    Participation in church activities and prayer**

Davianna Simmons testified that she prays most nights that the police will not come back.  This evidence is relevant on the question of her ongoing injuries and damages, and it is not unfairly prejudicial.  Testimony that Keith Simmons works part-time as a church deacon is relevant background, just as the employment of any witness is typically relevant, and it is not unfairly prejudicial.  Defendants' motion is granted, however, with regard to church-related evidence or argument other than these two points (participation in church activities, the fact that plaintiffs are church-going people, etc.).

**21.    Building court matters involving the Simmons family**

This motion is unopposed by plaintiffs, so the Court grants it.

**22.    Evidence about *Obrycka, Padilla*, and other *Monell* cases against the City**

Evidence regarding other particular *Monell* cases against the City, including the *Obrycka* and *Padilla* cases, is excluded under Rule 403.  The amount of evidence that would be required to explain the facts and decisions in those cases would divert the jury

in a way that significantly outweighs the probative value of the evidence.  On one particular point, plaintiffs want to introduce evidence regarding the City's non-action following the *Obrycka* case.  This does not change the Court's analysis under Rule 403; the probative value of the particular evidence is not terribly significant.

### 23.    Department of Justice report regarding Chicago Police Department

Earlier this year, the U.S. Department of Justice issued a report following an investigation of the Chicago Police Department and the Independent Police Review Authority.  Plaintiff intend to offer portions of the report to support their *Monell* claim, specifically sections concerning the adequacy of investigation, discipline, and supervision of use-of-force complaints; failure to discipline officers when the victims of use of force are African-American; the existence of a "code of silence"; and the use of force against minors.  Defendants argue the report is inadmissible hearsay and alternatively that it should be excluded under Rule 403.

The Court overrules defendants' hearsay objection.  The report contains factual findings resulting from a legally authorized investigation and is therefore admissible under Federal Rule of Evidence 803(8)(A)(iii) absent a finding of lack of trustworthiness, which defendants have not attempted to show.  *See Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016).  The Rule's reference to "factual findings" includes "an evaluative report containing both opinions and conclusions," and a report that combines third-party statements with an investigator's observations and conclusions also qualifies.  *Id.*

The Court also overrules defendants' Rule 403 objection.  The report is, no doubt, prejudicial, but the Rule requires a showing of *unfair* prejudice that significantly outweighs the probative value of the evidence.  Defendants have failed to show any

unfair prejudice with regard to points that are directly at issue in this case, including plaintiffs' *Monell*-based contentions regarding failure to supervise, investigate, and discipline allegations of excessive force and their allegations regarding the comparative treatment of complaints where the alleged victim of excessive force is African-American. And the report has significant probative value. *See Daniels*, 833 F.3d at 731 (similar findings in a DOJ report regarding the Cook County Jail "go a long way toward meeting a plaintiff's burden of proving an unconstitutional custom, policy or practice under *Monell*").

The Court excludes, however, the portions of the report concerning a "code of silence" within the police department and use of excessive force against minors, under Rule 402, Rule 403, or both. The discussion on the latter point appears to be focused on teenagers, not toddlers or very young children. And at the hearing on the motions *in limine*, plaintiffs were unable to articulate a viable theory of how the alleged code of silence affects this case—given the absence of a complaint or an investigation regarding the incident in question.

The Court also reserves the right to make further orders regarding the specific portions of the DOJ report that will be admitted in evidence.

### 24.    Police Accountability Task Force report

Plaintiffs also wish to offer in support of their *Monell* claim sections from a 2016 report issued by a Police Accountability Task Force appointed by Chicago Mayor Rahm Emanuel. Specifically, they seek to admit portions of the report regarding an evaluation of inadequacies in the police department's disciplinary system. Defendants seek to exclude the report as hearsay and under Rule 403.

The Court overrules defendants' objection.  First of all, the report is not hearsay; it qualifies as a statement of an authorized person or agent of an opposing party (the City) under Federal Rule of Evidence 810(d)(2)(C) & (D).  Second, even if that were not so, the report is admissible under Rule 803(8)(A)(iii), just like the DOJ report, as the report includes factual findings made by a public office resulting from a legally authorized investigation.  The fact that the task force included some non-governmental personnel is beside the point; what matters is whether the task force was a public body vested with authority to investigate the issues under consideration, which it was.  And finally, the Court overrules defendants' Rule 403 objection for the reasons described with regard to the DOJ report.

Admission of the report is limited to sections covering the same subjects discussed with regard to the DOJ report.  And as with the DOJ report, the Court reserves the right to make further orders regarding the specific portions of the Task Force report that will be admitted in evidence.

### 25.    Rule 30(b)(6) witnesses

Defendants have moved to exclude testimony elicited during a deposition of the City pursuant to Federal Rule of Civil Procedure 30(b)(6) concerning whether the City took action in the wake of the *Obrycka* decision.  Because the Court has excluded the *Obrycka* matter under Rule 403, this topic is necessarily off-limits as well.

There is also apparently an issue regarding the admissibility of testimony regarding sections of the City's collective bargaining agreement (CBA) with the police union and how they affected the alleged code of silence.  There may be more than one basis for excluding this testimony, but the Court has already explained why evidence

19

relating to an alleged code of silence is inadmissible in this case, and that also covers testimony about the CBA that bears on the point.

### 26. Testimony about Lorenzo Davis

This motion is unopposed and is therefore granted.

### 27. References to "official policymakers"

The Court will determine as part of the process of preparing preliminary jury instructions how the jury will be instructed on who is or who are official policymakers for the City for purposes of the *Monell* claim. Any argument that is inconsistent with the Court's eventual ruling on this point is precluded.

### 28. Sharon Fairley and Dean Angelo video interviews

The comments during a video recorded interview of IPRA Chief Sharon Fairley regarding previous deficiencies in the process of investigating complaints against police officers are not hearsay. (Plaintiffs want to offer this in support of their *Monell* claims.) At the time of the statements, Fairley was (and she still is) an agent of the City, and she was speaking on matters within the scope of her agency. The Court sustains defendants' objection under Federal Rule of Evidence 407 regarding measures that Fairley and the City instituted to deal with the deficiencies, but this does not preclude her from speaking about the deficiencies themselves. Fairley also has an adequate foundation for speaking on these points; upon her appointment to the position with IPRA, she undertook an intensive inquiry into the agency's practices, and this, too, was done within the scope of her authority. Finally, the evidence is highly probative, and defendants have failed to show that it has an unfairly prejudicial effect that substantially outweighs its probative value.

As with the DOJ and Task Force reports, the Court reserves the right to make further orders regarding the specific portions of Fairley's statements that will be admitted in evidence.

Plaintiffs do not respond to defendants' request to exclude a video interview of then-police union chief Dean Angelo, so they are deemed to have conceded the point.

**29.     Testimony regarding code of silence / Mayor Emanuel's comments**

This motion is granted for the reasons previously discussed.

**30.     Expert opinions of Stan Smith and Tim Longo**

**a.     Stan Smith**

Stan Smith is an expert in statistical analysis; plaintiffs intend to call him to testify in support of their *Monell* claims. Plaintiffs have established his qualifications to render opinions regarding statistical analysis and comparison (including criticism of the analysis by defendants' opposing expert Judith Roberts); he, like Roberts, needs no expertise in police practices to do this. Defendants' criticisms regarding what Smith reviewed go to the weight to be given his testimony and are an appropriate basis for cross-examination but not for exclusion of the testimony. Plaintiffs have committed not to offer testimony from Smith involving qualitative assessments of the Chicago Police Department's practices or the effect of those practices (or the conclusions drawn from his statistical analysis) on what officers might believe, points on which Smith has no apparent expertise. *See* Pls.' Resp. to Defs.' Mots. In Limine at 60-61. With this commitment in hand, the Court denies defendants' motion regarding Smith.

**b.     Tim Longo**

Defendants also seek to exclude certain opinions of Tim Longo, an expert on

police practices offered in support of plaintiffs' *Monell* claims.  There is nothing inappropriate about Longo's reliance on an assumed set of facts provided by plaintiffs' counsel, so long as those facts are consistent with evidence that will be admitted, which plaintiffs have shown is the case here.  *See Williams v. Illinois*, 567 U.S. 50, 57 (2012) (plurality opinion) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true.  It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert.").

The Court addresses later, in connection with plaintiffs' motion *in limine* concerning defense expert Jeffrey Noble, the propriety of testimony regarding what Illinois law provides regarding the investigation of a complaint about a police officer that does not include an affidavit.  That same ruling applies here.

With regard to Longo's supplemental report, because over five months remain before trial, the Court will overrule defendants' motion to exclude opinions in that report and thus will bypass the questions of whether they are actually new opinions and whether defendants are unfairly prejudiced.  *See* Fed. R. Civ. P. 37(c)(1).  The Court instead directs plaintiffs to produce Longo for a deposition on the matters in the supplemental report.  The deposition is to take place within the next 30 days at a mutually convenient date and time; it will be limited to 90 minutes (though it is unlikely that much is reasonably necessary); plaintiffs will be required to compensate Longo for his preparation and deposition time; and they will also be required to pay twice the amount of time that the attorney for the City of Chicago takes to question Longo during

the deposition,[1] at that attorney's regular hourly rates. Payment must be tendered within seven days after the taking of the deposition.

### 31.   Expert opinions of Dr. Niranjan Karnik

Defendants have moved to exclude four of the opinions offered by plaintiff's expert witness Dr. Niranjan Karnik, a professor of psychiatry who specializes in child psychiatric care. Karnik rendered opinions regarding the psychiatric condition of Davianna Simmons and its causation. The four opinions that defendants ask to exclude are:

- the police failed to account for Davianna's needs in connection with their entry and search of the home;

- Davianna needs long-term, specialized treatment to address post-traumatic stress disorder caused by defendants' actions;

- consideration should be given to paying for the Simmons family to move Davianna to a different neighborhood; and

- defendants' expert Steven Hanus lacks the qualifications to render an opinion.

Plaintiffs do not intend to offer testimony from Dr. Karnik on the third and fourth points, so only the first two are in dispute.

The Court overrules defendants' contention that Dr. Karnik should not be able to discuss defendants' tactics during the entry and search because he has no expertise in police practices. Plaintiffs are offering his testimony not to address the propriety of the tactics that were used but rather to show how they affected Davianna and how different tactics might have led to a different outcome for her. This is squarely within Dr. Karnik's

---

[1] This accounts for reasonable preparation time.

unquestionable expertise.

The Court also overrules defendants' contention that Dr. Karnik should be precluded from addressing causation. Plaintiffs have adequately shown that Dr. Karnik followed accepted and acceptable methodology. Defendants' contention that he did not consider or did not adequately consider other factors that might have caused Davianna's condition is a matter for cross-examination, not a basis for exclusion of his testimony. In addition, as indicated in the previous section of this decision, there is nothing in the least bit unacceptable in having Dr. Karnik assume a factual scenario as the basis for his opinions, so long as it is adequately supported by the evidence, which it is in this case. *See Williams*, 567 U.S. at 57.

**C.    Plaintiffs' motions 7, 8, and 10 through 16**

**7.    Witnesses' prior arrests and convictions**

The Court excludes evidence of witnesses' prior arrests that did not result in convictions. *See, e.g., Michelson v United States*, 335 U.S. 469, 382 (1948); *Nelson v. City of Chicago*, 810 F.3d 1061, 1067 (7th Cir. 2016); *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013).

The Court excludes Aretha Simmons's "conviction" for retail theft in 2012; under Illinois law, supervision does not amount to a conviction. And if one assumes this is a felony conviction, which is unclear, its probative value is minimal. *See* Fed. R. Evid. 403. The Court also excludes Dorothy Guider's 2000 conviction, which is more than ten years old and thus presumptively inadmissible; defendants have not made the case for admitting this conviction. *See* Fed. R. Evid. 609(b).

### 8. Defendants' commendations and awards

This evidence is presumptively inadmissible as evidence of good character. However, in a trial, bifurcated or not, that includes the claims against the officer defendants, if plaintiffs offer evidence of prior complaints and disciplinary actions against the officer defendants, those defendants may offer evidence of commendations and awards to rebut the possibility of an inference of bad character.

### 10. Opinion testimony by Steven Hanus

Ruling on plaintiffs' motion to bar testimony by defense expert Steven Hanus is deferred pending a *Daubert* hearing at which Dr. Hanus will appear and testify, to be held on January 4, 2018. The Court has determined that a *Daubert* hearing is needed to determine the admissibility of Dr. Hanus's opinions that Davianna Simmons does not suffer from post-traumatic stress disorder and any opinion in which Dr. Hanus offers any sort of diagnosis of Davianna or offers alternatives causes or possible causes of Davianna's alleged symptoms.

### 11. Opinion testimony by Jeffrey Noble

As the Court stated at the hearing on the motions *in limine*, there will be a stipulation, judicial notice, and/or an instruction regarding the state of the law (statutory and decisional) regarding the ability of police departments to investigate complaints not supported by an affidavit. On this basis among others, defense expert Jeffrey Noble's opinion regarding the state of the law on this point is excluded.

### 12. Flaws in Chicago Police Department complaint file data

The Court overrules this objection; defendants are entitled to explore claimed flaws in one of the databases of police complaint file data upon which plaintiff's experts

relied.

### 13. Opinion testimony by Judith Roberts

Defendants' expert Judith Roberts may render opinions involving statistical analysis, including criticism of the methodology of plaintiffs' expert Stan Smith; she is qualified to do so, and these opinions are relevant. Opinions that include assumptions about police practices or other matters on which she lacks the requisite qualifications are excluded. These include:

- what actually constitutes "meaningful" discipline for a police officer (like Smith, Roberts may give testimony based on hypothetical scenarios, assuming these are included within her disclosures, but she may not independently opine on what is meaningful);

- the effectiveness of the Chicago Police Department's disciplinary policies and practices, including the review process and command channel review;

- reasons why complaints by African-American citizens may have a lower rate of being sustained;

- the practices of the New York Civilian Complaint Review Board and comments on the DOJ report regarding the Chicago Police Department;

- discussion about the likelihood of citizens to file complaints, and about whether some alleged excessive force events are justified; and

- how investigations are done, including how unnamed officers are identified and what evidence is evaluated.

If the City requires further clarification regarding exactly what is and is not admissible under the Court's ruling, it must seek clarification before trial.

**14, 15 & 16.  Arguments regarding jurors as taxpayers and officers as unable to pay a judgment; excluding non-party witnesses other than experts**

These motions are unopposed and are granted.

Date:  August 28, 2017

_____
MATTHEW F. KENNELLY
United States District Judge