# Exhibit 8

# Arbitration Award

**City of Chicago,
Department of Police
and
Fraternal Order of Police,
Chicago Lodge No. 7**

126 LA (BNA) 759
ARB No. 07-72

March 26, 2009

Steven M. Bierig, Arbitrator.

**Issue**

Did the Department violate Sections 18.3 and 18.4 of the Contract by scheduling Police Officers Torres, Glover, Conrad, Tremore, Craig, Diego, Stelag and Castillo to work positions at the Office of Emergency Management and Communications that included the parking lot guard hut, the front desk and the loading dock from December 27, 2005 to the present?

If so, what shall be the appropriate remedy?

**Relevant Contract and General Order Provisions**

**A. Contract Provisions**

Article 4—Management Rights

The Employer has and will continue to retain the right to operate and manage its affairs in each and every respect. The rights reserved to the sole discretion of the Employer shall include, but not be limited to, rights:

> A. To determine the organization and operations of the Department of Police;
>
> B. To determine and change the purpose, composition and function of each of its constituent departments, and subdivisions;
>
> C. To set standards for the services to be offered to the public;
>
> D. To direct the officers of the Department of Police, including the right to assign work and overtime;
>
> E. To hire, examine, classify, select, promote, restore to career service positions, train, transfer, assign and schedule officers;
>
> F. To increase, reduce or change, modify or alter the composition and size of the work force, including the right to relieve employees from duties because of lack of work or funds or other proper reasons, * * *
>
> I. To establish, modify, combine or abolish job positions and classifications;
>
> J. To add, delete or alter methods of operation, equipment or facilities; and

 K. To determine the locations, methods, means, and personnel by which the operations are to be conducted, including the right to determine whether goods or services are to be made, provided or purchased.

 L. To establish, implement and maintain an effective internal control program;

 M. To suspend, demote, discharge, or take other disciplinary action against officers for just cause;

 N. To add, delete or alter policies, procedures, rules and regulations.

Inherent managerial functions, prerogatives and policymaking rights, whether listed above or not, which the Employer has not expressly restricted by a specific provision of this Agreement are not in any way, directly or indirectly, subject to the grievance and arbitration procedures contained herein, provided that no right is exercised contrary to or inconsistent with other terms of this Agreement.

Article 9—Grievance Procedure
* * *

Section 9.7—Authority of the Arbitrator.

A. Except as specified in Subsection C below, the Arbitrator shall have no right to amend, modify, nullify, disregard, add to, or subtract from the provisions of this Agreement. The Arbitrator shall only consider and make a decision with respect to the specific issue or issues presented to the Arbitrator and shall have no authority to make a decision on any other issue not submitted. The Arbitrator shall submit in writing his or her decision to the Employer and the Lodge within thirty (30) days following the close of hearing unless the parties agree to an extension thereof. The decision shall be based upon the Arbitrator's interpretation of the meaning or application of the terms of this Agreement to the facts of the grievance presented, and shall be final and binding upon the parties. * * *

Section 9.8—Expense of the Arbitrator.

The fee and expenses of the Arbitrator shall be borne by the party whose position is not sustained by the Arbitrator. The Arbitrator in the event of a decision not wholly sustaining the position of either party, shall determine the appropriate allocation of his or her fees and expenses. Each party shall be responsible for compensating its own representative(s) and witness(es). The cost of a transcript, where requested by either party, shall be paid by the party so requesting it.

The party requesting cancellation, rescheduling or other postponement of a set hearing date shall pay the Arbitrator's cancellation fee. * * *

Article 18—Disability Income

Section 18.3—Limited Duty I.O.D.

Officers injured in the line of duty, who are certified by the Medical Services Section as being able to perform limited duty assignments, shall be given limited duty assignments until they can perform regular duty assignments, or until they are mandatorily retired, whichever comes first.

Section 18.4—Recognized Openings

Any officer who is certified by the Medical Services Section as being able to perform a limited duty assignment may be placed by the Employer in a recognized opening, as defined in Section 23.9, notwithstanding anything in Section 23.9 to the contrary.

B. General Order Provisions

General Order 98-2-3

I. Purpose

This order outlines Department policy and defines procedures for a sworn member to be placed in the sworn limited/convalescent duty program.

II. Minimum eligibility requirements

A sworn member assigned to limited/convalescent duty will be required to:

A. safely carry, handle, and use his Department approved, prescribed firearm.

B. maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., crutches, canes, walkers, wheelchairs, etc.). * * *

III. Limited/convalescent duty

A. Subject to the availability of an assignment and consistent with a member's medical limitations, the Medical Services Section may place a sworn Department member into a:

>   1. convalescent duty status, when for a short period of time, the member will not be able to perform full duty tasks but is expected to return to full duty status, or
>
>   2. limited duty status, when, for an indefinite period of time, the member will not be able to perform full duty tasks.

B. A sworn Department member currently on the medical roll for either a certified injury on duty or off duty illness/injury may be placed into a limited/convalescent duty status by the Medical Services Section. * * *

D. A Department member on limited/convalescent duty due to an off duty illness/injury is required to submit medical documentation to the Medical Services Section from his attending physician.

E. The Medical Services Section may refer any member on limited/convalescent duty to a physician designated by the Department for a medical examination. The Medical Services Section will determine the member's continued use of the limited/convalescent duty program. All medical expenses incurred as the result of this evaluation will be the responsibility of the Department.

IV. Responsibilities

A. The Medical Services Section will:

>   1. contact a member's district/unit of assignment immediately upon granting any member limited/convalescent duty status. * * *
>
>   3. review each Department member's limited/convalescent duty status as indicated on the Convalescent Duty—Limited Duty Assignment/Release form. The Medical Services Section will record in the Department member's medical file the reason for the member's continued limited/convalescent duty status.

B. The district/unit commanding officer will:

    1. review the Convalescent Duty—Limited Duty Assignment/Release form and attempt to accommodate the Department member with a limited/convalescent duty assignment.

    2. contact the appropriate division chief or bureau deputy superintendent if the assigned unit cannot accommodate the Department member.

C. The division chief or deputy superintendent will:

    1. attempt to accommodate a Department member within his division/bureau with a limited/convalescent duty assignment when requested by a district/unit commanding officer.

    2. contact the Office of the First Deputy Superintendent, if the division/bureau cannot accommodate the Department member.

D. The Office of the First Deputy Superintendent will identify a limited/convalescent duty assignment (as available) within the Department to accommodate the member when requested by a division chief or deputy superintendent.

Note: A Department member on limited/convalescent duty due to a certified injury on duty will be accommodated.

**Statement of Facts**

**A. Introduction**

The instant case involves a dispute between the Fraternal Order of Police, Lodge No. 7 ("Lodge" or the "Union") and the City of Chicago Police Department (the "City" or "Department"). This is a class action Grievance filed on behalf of eight officers on limited/convalescent duty status, all of whom are covered by the Collective Bargaining Agreement (the "Contract") between the parties. The instant dispute is a result of the Department's assignment of the eight officers into three positions at the Office of Emergency Management and Communications ("OEMC"), specifically the parking lot guard shack, the loading dock and the front desk.

**B. Limited Duty/Convalescent Duty**

Pursuant to the Contract, the Department has an obligation to return an officer injured on duty to work if his/her medical condition allows. If an officer is unable to return to full duty, but can return in a limited duty capacity, the Department is obligated to accommodate the officer's medical status by placing him/her on limited or convalescent duty. The criteria for returning in a limited duty capacity, an officer must be able to fire his/her weapon and ambulate without assistance. The Contract does not mandate the return of an officer injured while off duty. However, the Department, at its discretion, can place officers injured while off duty on limited or convalescent duty. General Order 98-2-3 addresses limited/convalescent duty and applies to all officers.

Specifically, General Order 98-2-3 states in relevant part:

I. Purpose

    This order outlines Department policy and defines procedures for a sworn member to be placed in the sworn limited/convalescent duty program.

II. Minimum eligibility requirements

    A sworn member assigned to limited/convalescent duty will be required to:

    A. safely carry, handle, and use his Department approved, prescribed firearm.

B. maintain an independent and stable gait without the assistance of external ambulatory supporting devices (e.g., crutches, canes, walkers, wheelchairs, etc.). * * *

III. Limited/convalescent duty

A. Subject to the availability of an assignment and consistent with a member's medical limitations, the Medical Services Section may place a sworn Department member into a:

1. convalescent duty status, when for a short period of time, the member will not be able to perform full duty tasks but is expected to return to full duty status, or

2. limited duty status, when, for an indefinite period of time, the member will not be able to perform full duty tasks.

B. A sworn Department member currently on the medical roll for either a certified injury on duty or off duty illness/injury may be placed into a limited/convalescent duty status by the Medical Services Section. * * *

D. A Department member on limited/convalescent duty due to an off duty illness/injury is required to submit medical documentation to the Medical Services Section from his attending physician.

E. The Medical Services Section may refer any member on limited/convalescent duty to a physician designated by the Department for a medical examination. The Medical Services Section will determine the member's continued use of the limited/convalescent duty program. All medical expenses incurred as the result of this evaluation will be the responsibility of the Department.

IV. Responsibilities

A. The Medical Services Section will:

1. contact a member's district/unit of assignment immediately upon granting any member limited/convalescent duty status. * * *

3. review each Department member's limited/convalescent duty status as indicated on the Convalescent Duty—Limited Duty Assignment/Release form. The Medical Services Section will record in the Department member's medical file the reason for the member's continued limited/convalescent duty status.

B. The district/unit commanding officer will:

1. review the Convalescent Duty—Limited Duty Assignment/Release form and attempt to accommodate the Department member with a limited/convalescent duty assignment.

2. contact the appropriate division chief or bureau deputy superintendent if the assigned unit cannot accommodate the Department member.

C. The division chief or deputy superintendent will:

1. attempt to accommodate a Department member within his division/bureau with a limited/convalescent duty assignment when requested by a district/unit commanding officer.

2. contact the Office of the First Deputy Superintendent, if the division/bureau cannot accommodate the Department member.

> D. The Office of the First Deputy Superintendent will identify a limited/convalescent duty assignment (as available) within the Department to accommodate the member when requested by a division chief or deputy superintendent.
>
> Note: A Department member on limited/convalescent duty due to a certified injury on duty will be accommodated.

Barbara Hemmerling is a nurse and the Medical Administrator of the Department's Medical Services Section ("MSS"). Hemmerling explained the process that injured officers encounter in the MSS in order to be placed into a limited duty or convalescent duty status. Limited duty is assigned to officers who are not expected to return to full duty status for one year or more. Officers expected to return to duty within a year are assigned to convalescent duty. Whether injured while on duty or off, the process is the same.

An officer who is ready to return to work after having been on the medical roll must supply documentation to MSS from his/her doctor indicating any work restrictions. After a Case Management Nurse inputs the information from the doctor's note into the Department's CLEAR system, the officer is released from the medical roll and returned to work on limited or convalescent duty. The MSS does not assign the officer to a specific position; instead, the officer is released to an assignment consistent with the officer's medical restrictions.

The CLEAR system tracks the medical information for each individual officer. The CLEAR report is automatically sent to the Patrol Division, which handles all the Department's manning requirements. To protect the privacy of the officer, the report is available only to the Patrol Division and the supervisors at the assigned unit. Hemmerling testified that the CLEAR report includes only information relevant to the officer's work restrictions, and does not provide the specifics of the officer's medical condition.

According to Hemmerling, the Patrol Division may have an officer remain in his/her original unit of assignment or reassign the officer to another unit based on Department needs at the time. Many of the officers on limited or convalescent duty who are assigned to a unit other than their original patrol unit are assigned to Unit 376, the Alternate Response Unit.

Hemmerling testified that it is the officer's responsibility to report to his/her supervisor or the MSS, any Department violations of the officer's medical restrictions. According to Hemmerling, in the instant case, neither she, nor Lt. Weiskopf was aware of any violations.

## C. Assignments to Unit 376

Lt. Weiskopf is in charge of Unit 376. All Grievants in this matter were assigned to Unit 376. The Alternate Response Unit operates the 311 call center and provides security to the OEMC Facility. The 311 call center is available to the citizens of the City of Chicago for municipal, non-emergency assistance. Most of the officers assigned to Unit 376 are on restricted duty, 1 limited duty or convalescent duty, or are pregnant. A small number of full duty officers are assigned to Unit 376.

> 1 Restricted duty officers are those who have been relieved of their police powers while under investigation.

The three specific assignments at issue in this Grievance are the parking lot guard shack, the loading dock and the front desk at OEMC, including the relief spot. The Watch Supervisor of Unit 376 makes the daily work assignments at each location. The assignments may vary based on the fluctuations in manpower. According to Weiskopf, the Watch Supervisor attempts to accommodate the officer's work location preferences, but is not always able to do so. Weiskopf stated that medical restrictions normally do not play a role in assigning Unit 376 officers unless the officer notifies Weiskopf or a supervisor of his/her specific restrictions. Weiskopf stated that he does not receive lists of the Unit's officers' specific medical restrictions.

The officers assigned to the front desk area at OEMC control access to the front entrance of the Facility. The officers are required to monitor the video screens displaying individuals entering and exiting the building, and may have to check identification to allow entry. They are also responsible for maintaining the sign-in log and must notify employees within the Facility when they have a visitor.

The guard shack assignment is responsible for securing the front gate to prevent unauthorized entry. Weiskopf stated that this officer must "basically act as a police officer while they're there". Weiskopf also stated that it is acceptable for the guard shack officer to sit and read at his/her post if the situation allows.

The officer assigned to the loading dock provides security and maintains control over access to the Facility through that door. The officer is required to observe the computers and video camera that monitor areas both inside and outside of the Facility. The loading dock officer's tasks also include receipt of deliveries and prevention of unauthorized entry.

Weiskopf stated that he expects the officers of Unit 376 to exercise police powers. All three positions in question required the officer to be armed and in uniform.

According to Weiskopf, a Unit 376 officer who witnesses a crime is required to take appropriate police action, which is more than simply calling dispatch on the radio. However, Weiskopf stated that Department did not expect officers to work in violation of medical restrictions.

**D. The Testimony of Officer Niagra Craig**

Officer Craig testified regarding instances in which she worked in each of these three posts at OEMC and was required to take police action in violation of her medical restrictions. Officer Craig testified about a robbery that occurred in March 2006 at the Subway Restaurant across the street from the guard shack. Officer Craig had been working relief at the front desk when a woman came in to report that she had been robbed.

A flash message was transmitted providing a description of the offender and Officer Craig thought she saw an individual matching that description. A second flash message was transmitted, relaying that the offender boarded a bus. Officer Craig saw the bus and ran towards it to obtain the bus number and provide it to other officers who could stop the bus. Officer Craig testified that she was required to take police action that was inconsistent with her medical restrictions.

Officer Craig relayed an incident that occurred while she was assigned to the loading dock. A large, unauthorized delivery truck was approaching the loading dock at a high speed. The driver slammed on the breaks and stopped the truck directly in front of the dock area, blocking one of the secured parking areas. The driver and passenger jumped out of the truck and ran down the alley. Officer Craig pushed open the loading dock's heavy door and ran outside to investigate the matter and observed the two men running away. She climbed up into the truck to ensure that it was safe. Officer Craig was required to "… twist, turn, push, run and climb" in violation of her medical restrictions.

Officer Craig stated that she was also required to perform in violation of her medical restrictions when working at the front desk. Officers work alone at the front desk. A former traffic management aid and his mother came in to obtain his paycheck. Officer Craig informed him that he was not allowed inside the building and that he would have to get someone to retrieve his personal belongings. The former employee began to yell and scream and walked past Officer Craig. Officer Craig hurried towards him to keep him from going down the hall. Only because the former employee's mother helped to restrain him was Officer Craig spared from being involved in a physical altercation with this man. However, Officer Craig was required to twist and turn to quickly get out of her chair, in violation of her medical restrictions.

Officer Craig testified that she informed Sergeant Shed that it was dangerous for officers to work the front desk area alone. She admits, however, that she never indicated to Lt. Weiskopf that the assigned positions violated her medical restrictions.

**Positions of the Parties**

**A. The Union**

The Union takes the position that all Grievants were in a limited duty status and assigned to positions that required full duty actions. The Union points out that there is a distinction between the tasks that full duty and limited duty officers can perform. They argue that placing limited duty officers in positions that require full duty actions is not consistent with the accommodations required by the Contract and the General Order.

The Union states that the Department does have the right to assign police officers to various positions within the Department under the Management Rights Clause. However, the Union maintains that the Management Rights Clause is limited by the more specific provisions set forth in Section 18.3, that requires the Department to place limited duty officers into assignments that are not inconsistent with their medical restrictions.

Moreover, the Union reasons that it was unnecessary to assign the officers to said positions at OEMC, because full duty officers were available to perform these duties, thereby allowing the limited duty officers to perform less rigorous work, such as that of a call taker. The Union asserts that the Department did not even consider the officers' specific medical conditions when placing them in these three posts.

For all the reasons outlined above, the Union asks that the Grievance be sustained in its entirety and requests that the Department cease and desist from assigning limited duty officers to the three specified positions at OEMC.

**B. The Department**

The Department takes the position that the Union did not meet its burden of proof in this case. The Department argues that it is Department policy to return injured workers back to work as soon as possible. The Department places injured workers on either limited duty or convalescent duty consistent with their medical restrictions. When the officers are cleared by the Medical Services Section, they are to be returned to any assignment consistent with their medical restrictions.

In addition, the Department points out that determining assignments is a valid exercise of its Management Rights. It is not arbitrary or capricious to place officers in assignments consistent with their medical restrictions. The Department argues that there is a rational basis for their actions and those actions must be upheld.

Finally, the Department stresses that one cannot broadly label positions in the Police Department as limited duty or full duty. There is no distinction. The Department asserts that all police officers are at risk on the job.

For all these reasons, the Department requests that the Grievance be denied in its entirety.

**Discussion and Findings**

**A. Introduction**

I find that the Department violated the Contract when it assigned Grievants to positions in which their medical restrictions were violated. The Department's actions in assigning these officers to OEMC positions including the guard shack, the loading dock and the front desk area were unreasonable and violated Section 18.3.

The Department is ordered to cease and desist from placing officers on limited or convalescent duty status into said positions at OEMC, which were inconsistent with Grievants' medical restrictions. It was foreseeable that Grievants would have to perform police functions inconsistent with their medical restrictions.

Of course, there are times that an individual officer may be placed in a position consistent with their medical restrictions, but nonetheless be required to exercise police powers in an emergency situation that are

incompatible with his/her medical restrictions. In an emergency, these situations cannot be avoided. In addition, to the extent that an officer is aware that a position could or does require actions inconsistent with his/her medical restrictions, that officer should immediately report such a situation to his/her supervisor.

With the permission of the parties, I will retrain jurisdiction to resolve any issues of application or interpretation of this Award.

### B. Discussion

The instant dispute is a result of the Department's assignment of eight officers into three positions at OEMC, specifically the parking lot guard shack, the loading dock and the front desk.

Pursuant to the Contract, the Department has an obligation to return an officer injured on duty to work if his/her medical condition allows. If an officer is unable to return to full duty, but can return in a limited duty capacity, the Department is obligated to accommodate the officer's medical status by placing him/her on limited or convalescent duty. The Contract does not mandate the return of an officer injured while off duty. However, the Department, at its discretion, can place officers injured while off duty on limited or convalescent duty.

Hemmerling explained the process that injured officers encounter in the MSS in order to be placed into a limited or convalescent duty status. An officer who is ready to return to work after having been on the medical roll must supply documentation to MSS from his/her doctor indicating any work restrictions. After a Case Management Nurse inputs the information from the doctor's note into the Department's CLEAR system, the officer is released from the medical roll and returned to work.

The CLEAR report is automatically sent to the Patrol Division, which handles all the Department's manning requirements. To protect the privacy of the officer, the report is available only to the Patrol Division and the supervisors at the assigned unit. According to Hemmerling, the Patrol Division may have an officer remain in his/her original unit of assignment or reassign the officer to another unit based on Department needs at the time. Hemmerling testified that it is the officer's responsibility to report to his/her supervisor or the MSS, any Department violations of the officer's medical restrictions.

All Grievants in this matter were assigned to Unit 376. The Alternate Response Unit operates the 311 call center and provides security to the OEMC Facility. Most of the officers assigned to Unit 376 are on restricted duty, limited duty or convalescent duty, or are pregnant. The three specific assignments at issue in this Grievance are the parking lot guard shack, the loading dock and the front desk at OEMC, including the relief spot. The Watch Supervisor of Unit 376 makes the daily work assignments at each location. According to Weiskopf, the Watch Supervisor attempts to accommodate the officer's work location preferences, but is not always able to do so. Weiskopf stated that medical restrictions normally do not play a role in assigning Unit 376 officers unless the officer notifies Weiskopf or a supervisor of his/her specific restrictions.

The officers assigned to the front desk area at OEMC control access to the front entrance of the Facility. The officers are required to monitor the video screens displaying individuals entering and exiting the building, and may have to check identification to allow entry. The guard shack assignment is responsible for securing the front gate to prevent unauthorized entry. Weiskopf also stated that it is acceptable for the guard shack officer to sit and read at his/her post if the situation allows. The officer assigned to the loading dock provides security and maintains control over access to the Facility through that door. The officer is required to observe the computers and video camera that monitor areas both inside and outside of the Facility.

The loading dock officer's tasks also include receipt of deliveries and prevention of unauthorized entry. Weiskopf stated that he expects the officers of Unit 376 to exercise police powers. All three positions in question required the officer to be armed and in uniform. According to Weiskopf, a Unit 376 officer who witnesses a crime is required to take appropriate police action, which is more than simply calling dispatch on the radio. However, Weiskopf stated that Department did not expect officers to work in violation of medical restrictions.

Officer Craig testified regarding instances in which she worked in each of these three posts at OEMC and was required to take police action in violation of her medical restrictions. Officer Craig testified about a robbery that occurred in March 2006 at the Subway Restaurant across the street from the guard shack. Officer Craig had been working relief at the front desk when a woman came in to report that she had been robbed.

A flash message was transmitted providing a description of the offender. A second flash message was transmitted, relaying that the offender boarded a bus. Officer Craig saw the bus and ran towards it to obtain the bus number and provide it to other officers who could stop the bus. Officer Craig testified that she was required to take police action that was inconsistent with her medical restrictions.

Officer Craig relayed an incident that occurred while she was assigned to the loading dock. A large, unauthorized delivery truck was approaching the loading dock at a high speed. The driver slammed on the breaks and stopped the truck directly in front of the dock area. The driver and passenger jumped out of the truck and ran down the alley. Officer Craig pushed open the loading dock's heavy door and ran outside to investigate the matter and observed the two men running away.

Officer Craig stated that she was also required to perform in violation of her medical restrictions when working at the front desk. A former traffic management aid came in to obtain his paycheck. The former employee began to yell and scream and walked past Officer Craig. Officer Craig hurried towards him to keep him from going down the hall, requiring her to twist and turn to quickly get out of her chair, in violation of her medical restrictions. Officer Craig testified that she informed Sergeant Shed that it was dangerous for officers to work the front desk area alone. She admits, however, that she never indicated to Lt. Weiskopf that the assigned positions violated her medical restrictions.

In the instant case, the Union presented credible evidence of instances in which the necessary tasks performed required the violation of the limited duty officer's medical restrictions. The Department maintains that it is the officer's responsibility to report situations in which an assignment is inconsistent with medical restrictions.

The Department is correct that it is the Union's burden to establish that the Contract was violated. The Union argues that the Department has violated Sections 18.3 and 18.4 by assigning limited duty officers to positions at OEMC in which they may be required to exercise police duties inconsistent with their medical restrictions. Section 18.3 requires the Department to place officers injured in the line of duty in limited duty assignments when the MSS releases them from the medical roll. Section 18.4 allows the Department to do the same for officers injured while off duty.

While the Contract does not require the Department to treat off-duty and on-duty injuries similarly, once placed on limited/convalescent duty, officers must be treated equally. Barbara Hemmerling testified that the process for returning officers to work is the same whether the officers are injured while on or off duty.

When an officer is ready for release from the medical roll, the officer is required to bring in a document from his/her doctor indicating any medical restrictions. Once the information is entered into the CLEAR system, the officer is cleared to return to work to any position consistent with his/her medical restrictions. The Department maintains that the MSS does not release officers to any particular assignment, but to any assignment that would be consistent with the officer's medical restriction

As the Department correctly points out, the Management Rights Clause gives the Department the authority to assign officers. However, I note that this right is specifically limited by the language in Section 18.3 that requires the Department to assign officers to a limited duty assignment. The language of the Management Rights Clause specifically limits that Clause when it is inconsistent with other specific provisions of the Contract. The last sentence of the Management Rights Clause states:

Inherent managerial functions, prerogatives and policymaking rights, whether listed above or not, which the Employer has not expressly restricted by a specific provision of this Agreement are not in any way, directly or

indirectly, subject to the grievance and arbitration procedures contained herein, provided that no right is exercised contrary to or inconsistent with other terms of this Agreement.

It is axiomatic that when a specific contract provision and a general provision address the same issue and are inconsistent, the more specific provision controls. Elkouri, How Arbitration Works, 6th Ed. at p. 469-470.

In the instant case, the Management Rights Clause is limited by the more specific provision of Section 18.3 and General Order 98-3-2. In the instant case, the Department assigned officers on limited/convalescent duty to Unit 376 based on manning needs and absolutely had the right to take that action. However, the problem arose that the three positions in question in this case at times required full duty activities that were inconsistent with the officers' medical restrictions. Requiring officers on limited duty to perform full duty assignments that are incompatible with their medical restrictions is a violation of Section 18.3 and General Order 98-3-2.

In order for an officer on the medical roll to be released to limited duty, the officer must be able to use their weapon and to ambulate independently. Once an officer meets these two criteria, they are released by MSS to any position that does not conflict with their medical restrictions. If the supervisors who are making the assignments are unaware or don't consider the medical restrictions, they run the risk of violating Section 18.3.

Lt. Weiskopf testified that all officers assigned to Unit 376 are expected to take police action. Restricted duty officers are not in uniform and cannot take police action, and therefore are not assigned to the three positions in question. Officers on limited/convalescent duty may be unable to perform at least some aspects of police action when such action requires activity inconsistent with medical restrictions.

Because it is clear that police action is expected in the three relevant positions, and Grievants, as exemplified by Officer Craig, were medically unable to perform these all expected duties, it was unreasonable for the Department to assign Grievants to these positions. It was reasonably foreseeable that Grievants might not have been able to engage in police functions inconsistent with their medical restrictions.

Weiskopf testified that officers in Unit 376 are required to exercise police powers and authority, if needed, because that is their job. When Officer Craig was placed into assignments that would likely require the use of police powers, as did occur on several occasions, she was being assigned to positions inconsistent with her medical restrictions. Regarding Officer Craig, and all Grievants, said assignments by the Department were unreasonable and in violation of Section 18.3 of the Contract.

In sum, in the instant case, the Department violated the Contract when it placed Grievants in positions in which their medical restrictions were violated. In this case, the Department could have reasonably foreseen that positions such as these that regularly deal with the public could have placed Grievants in situations incompatible with their medical restrictions.

I find that the Union has met its burden of proof in this matter. The Department's actions in assigning Grievants to the guard shack, the loading dock and the front desk area violated Section 18.3. Not only were these assignments unreasonable because of Grievants' medical restrictions, but were a direct violation of Section 18.3.

The Department is ordered to cease and desist from placing officers on limited or convalescent duty from those positions at OEMC.

Of course, there are times that an individual officer may be placed in a position consistent with his/her medical restrictions, but nonetheless, unforeseeably be required to exercise police powers inconsistent with his/her medical restrictions. In a bona fide, unforeseeable emergency, such a situation cannot be avoided and will not be considered a violation of Section 18.3. In addition, to the extent that an officer is aware that a position could or does require actions that are inconsistent with his/her medical restrictions, that officer should immediately report such a situation to his/her supervisor.

With the permission of the parties, I will retrain jurisdiction to resolve any issues of application or interpretation of this Award.

## Award

For the reasons stated in this Opinion and Award, the Arbitrator finds:

The Grievance is sustained. The Department acted unreasonably when it assigned Grievants to the guard shack, loading dock and front desk at OEMC.

The Department is ordered to cease and desist from placing officers on limited/convalescent duty into said positions at OEMC, the duties of which are inconsistent with limited/convalescent duty medical restrictions. It was foreseeable that Grievants might have to perform police functions inconstant with their medical restrictions.

With the permission of the parties, I will retrain jurisdiction to resolve any issues of application or interpretation of this Award.