# Exhibit 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ARETHA SIMMONS, for herself and on behalf )
of DAVIANNA SIMMONS, a minor, EMILY )
SIMMONS and KEITH SIMMONS, )
                        )
          Plaintiffs, )    Case No. 14 C 9042
                        )
          v. )    Judge Matthew F. Kennelly
                        )
THE CITY OF CHICAGO; et al., )    Magistrate Judge Jeffrey T. Gilbert
                        )
          Defendants. )

### DEFENDANT CITY'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION

Defendant City of Chicago (the "City"), by and through its attorneys, Molly E. Thompson and Harry N. Arger of Dykema Gossett PLLC, for its amended responses to Plaintiffs' Requests for Production, states the following:

### Amended Answers to Plaintiffs' Amended First Set of Request for Production

5.     Any and all photographs (color prints not photocopies) that were taken of any plaintiff, any plaintiffs seized property, or of plaintiffs' home (930 N. Keystone, Chicago, IL 60651) before, during or after defendants' search of plaintiffs' home.

**RESPONSE:** The City refers Plaintiffs to the photos of Aretha Simmons and color photographs of the residence that were produced. See FCRL 001293-001307 and CITY-AS-000787.

12.     Any and all documents showing, reflecting or related to any convictions, arrests, or detentions by any governmental entity or law enforcement agency (including but not limited to "rap sheets" and arrest or C.B. reports) for the following persons: plaintiffs; each of Plaintiffs' witnesses disclosed to Defendants in their Rule 26(a)(1) disclosures; the Individual Police Defendants; each of Defendants' witnesses disclosed to Plaintiffs in Defendants' Rule 26(a)(1) disclosures; and all other persons Defendants might call as witnesses in this lawsuit.

**RESPONSE:** Following a reasonable search, in addition to the histories of Alonzo McFadden and Aretha Simmons previously identified, the City identifies the following

documents responsive to this request: FCRL 000360-384 and CITY-AS-14730-32. The City has also searched for criminal histories of Emily Simmons and Keith Simmons and no responsive material was found. The City does not provide responsive materials relating to any criminal history of the witnesses identified in paragraph nos. 8-22 of Plaintiffs' Second Amended Rule 26(a)(1) Disclosures because the City represents that it does intend to introduce any past conviction or arrest of those individuals into evidence and the materials are not otherwise relevant to Plaintiffs' claims or defenses. The City further states that Plaintiffs have not provided any residential addresses or other personal identifying information for the witnesses identified in paragraph nos. 8-22 of Plaintiffs' Second Amended Rule 26(a)(1) Disclosures, which would make it difficult to verify that the correct individual's history has been searched. The City also searched for criminal histories for Linda White, Kenya M. White, Kayla M. White, and Michael A. White. A criminal history was not found based on a search using the birthdate of Linda White. The City did not have personal identifying information for Kenya M. White, Kayla M. White and Michael A. White, other than their possible address so it had insufficient information to verify that no criminal history exists.

29.     The entire IPRA and IAD Complaint Register File for each of the defendant CPD officers, including but not limited to any and all attachments thereto, investigator notes, documents memorializing any witness interviews or attempted witness interviews, witness lists, police reports, to/from reports, physical evidence, photographs, Office of Emergency Communications tapes, scientific or laboratory tests and results, transcripts or summaries of any kind, personal data transmissions or other electronic communications, unit query and event query reports, medical and paramedic (or emergency medical services) records, investigative findings, and disciplinary recommendations.

**RESPONSE:** Pursuant to the agreement with Plaintiffs to limit the requested materials to complaint histories, summary digest reports, "face sheets," and certain identified complaint register files. Following a reasonable search, the City produced the following materials: FC.

These materials include CRMS histories, summary digest reports, "face sheets," and the following complaint register files identified by Plaintiffs.

30.     Any and all documents related to any supervisory or administrative review of investigative findings and any disciplinary recommendations in IPRA and IAD Complaint Register Files for each of the defendant CPD officers. This request includes documents, notes, memos, or communications related to command channel review and any administrative or court proceedings, including but not limited to those before the Police Board, complaint review panel, arbitrator, or judicial officer.

**RESPONSE:** Pursuant to the agreement with Plaintiffs to limit the requested materials to CRMS histories, summary digest reports, "face sheets," and certain identified complaint register files. Following a reasonable search, the City produced the following materials: FCRL 000040-359, 939-940, 943, 1308-3859 and CITY-AS-000788-2108, 2198-2737, 3855-2737, 3855-3936, 4114-4136, 4379-6379. These materials include CRMS histories, summary digest reports, "face sheets," and complaint register files identified and requested by Plaintiffs.

31.     Any and all documents related to any supervisory or administrative review of the investigative findings and any disciplinary recommendations concerning the allegations in Plaintiffs' Complaint. This request includes documents, notes, memos, or communications related to command channel review and any administrative or court proceedings, including but not limited to those before the Police Board, complaint review panel, arbitrator, or judicial officer.

**RESPONSE:** Pursuant to the agreement with Plaintiffs to limit the requested materials to CRMS histories, summary digest reports, "face sheets," and certain identified complaint register files. Following a reasonable search, the City produced the following materials: FCRL 000040-359, 939-940, 943, 1308-3859 and CITY-AS-000788-2108, 2198-2737, 3855-2737, 3855-3936, 4114-4136, 4379-6379. These materials include CRMS histories, summary digest reports, "face sheets," and the following complaint register files identified by Plaintiffs.

32.     The complete personnel file of each of the Individual Police Defendants. This includes but is not limited to all records reflecting each defendant officer's participation in or referral to the Department's Behavioral Alert, Behavioral Intervention, or Personnel Concerns programs or any similar programs), physical, psychological or evaluative tests for fitness for

3

duty, performance evaluations and ratings, awards or commendations, complaint and disciplinary records, job assignments and details, and employment application.

**RESPONSE:** . The City objects to the form of this request as it ostensibly seeks personnel files, but the phrase "including, but is not limited to" is followed by several records that are not a part of personnel files. The City also objects to the request for "physical" tests and "evaluative" tests as vague. Without waiving the foregoing objection, the City agrees to produce the personnel files of each of the Individual Police Defendants, any records reflecting each defendant officer's participation or referral to Behavioral Intervention or Personnel Concerns Program, any psychological tests for fitness for duty, performance evaluations and ratings, and complaint and disciplinary records. Following a reasonable search, the City identifies the following documents responsive to this request: FCRL 000385-943 and CITY-AS-003937-4028. The City did not locate any responsive psychological or fitness for duty tests.

35. Any and all documents relating to each Individual Police Defendant's participation in or referral to the Chicago Police Department's Personnel Concerns, Behavioral Alert, Behavioral Intervention Program and any similar programs.

**RESPONSE:** The City objects to the reference to "any similar programs" as vague. Subject to the forgoing objection, the City agrees to produce any and all documents relating to each Individual Police Defendant's participation in or referral to the Chicago Police Department's Personnel Concerns Program and Behavioral Intervention System. Following a reasonable search, the City identifies the following documents responsive to this request: FCRL 000941-942 and CITY-AS-004028 (the City recognizes Defendant Cwick is no longer a party).

36. Any and all documents relating to the physical, psychological or evaluative tests of each Individual Police Defendant, including but not limited to any tests administered for the fitness of duty.

**RESPONSE:** The City objects to the request for "physical" tests as irrelevant and not related to Plaintiffs' claims in this matter, and objects that the phrase "evaluative tests" is overly

broad and vague. Subject to without waiving any objection, the City agrees to produce all performance evaluations and any psychological tests, including any tests administered for the fitness of duty, for the Individual Defendants. Following a reasonable search, the City identifies the following documents responsive to this request: CITY-AS-3937-4027.

37.     All documents relating to CPD's review of the performance of the Individual Police Defendants from the time they began employment with the Chicago Police Department, including, but not limited to, performance reviews.

**RESPONSE:** The City objects to the request for "documents relating to CPD's review of the performance of the Individual Police Defendants. . ." as vague. Subject to without waiving any objection, the City agrees to produce all performance evaluations, including any tests administered for the fitness of duty, for the Individual Defendants. Following a reasonable search, the City identifies the following documents responsive to this request: CITY-AS-3937-4027.

42.     Any and all records of any disciplinary complaints and investigations (including Summary Punishment), whether or not acted upon formally or informally, including the entire Complaint Register files (IAD and IPRA records) disciplinary histories and summaries for each of the Individual Police Defendants at any time during their employment with CPD. For each such complaint, please also produce any and all documents relating to investigative and disciplinary recommendations, the review of the investigator's recommendations (including but not limited to review by supervisory personnel of IAD or IPRA, command channel review, review by the Superintendent, Police Board, and Complaint Review Panel), any administrative or judicial proceedings related to the complaint (including but not limited to proceedings before the Complaint Review Panel, Police Board, arbitrator, or judicial or administrative officer), and any official or unofficial action taken.

**RESPONSE:** Pursuant to the agreement with Plaintiffs to limit the requested materials to CRMS histories, summary digest reports, "face sheets," and certain identified complaint register files. Following a reasonable search, the City produced the following materials: FCRL 000040-359, 939-940, 943, 1308-3859 and CITY-AS-000788-2108, 2198-2737, 3855-2737, 3855-3936, 4114-4136, 4379-6379. These materials include CRMS histories, summary digest reports, "face sheets," and the complaint register files identified by Plaintiffs.

5

43.     For each year 2009-present, any and all documents containing information related to the number of excessive force complaints filed against Chicago police officers, the number that were filed by African-American complainants, the number and percentage of excessive force complaints that were sustained, and the number and percentage of excessive force complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the following data: the total number of excessive force complaints; the total number of sustained excessive force complaints; the total number of excessive force complaints that resulted in discipline of 5 days or longer suspension or in termination; the total number of excessive force complaints filed by African American complainants; the total number of excessive force complaints filed by African American complainants that were sustained; and the total number of excessive force complaints filed by African American complainants that resulted in discipline of 5 days or longer suspension or in termination. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "excessive force" as the following CRMS category codes: 03E, 05A, 05B, 05C, 05D, 05E, 05F, 05G, 05K, 05L, 05M, 05N, 05P, and 08B. Pursuant to this amended request, see CITY-AS-14714-720. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

44.     For each year 2009-present, any and all documents containing information related to the number of complaints of excessive force involving minors, the number and percentage of such excessive force complaints that were sustained, and the number and percentage of such excessive force complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

6

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the requested data. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "excessive force" as the following CRMS category codes: 03E, 05A, 05B, 05C, 05D, 05E, 05F, 05G, 05K, 05L, 05M, 05N, 05P, and 08B and "minors" as individuals who are age 0-17 at the time the complaint was filed. Pursuant to this amended request, see CITY-AS-014721. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

45.     For each year 2009-present, any and all documents containing information related to the number of complaints of excessive force involving young children, the number and percentage of such excessive force complaints that were sustained, and the number and percentage of such excessive force complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the requested data. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "excessive force" as the following CRMS category codes: 03E, 05A, 05B, 05C, 05D, 05E, 05F, 05G, 05K, 05L, 05M, 05N, 05P, and 08B and "young children" as

7

individuals who are age 0-7 at the time the complaint was filed. Pursuant to this amended request, see CITY-AS-014722. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

46.     For each year 2009-present, any and all documents containing information related to the number of illegal search complaints filed against Chicago police officers, the number and percentage of illegal search complaints that were sustained, and the number and percentage of illegal search complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "illegal search" as the following CRMS category codes: 03B, 03C. Pursuant to this amended request, see CITY-AS-014723. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

47.     For each year 2009-present, any and all documents containing information related to the number of damage/trespass to property complaints filed against Chicago police officers, the number and percentage of damage/trespass to property complaints that were sustained, and the number and percentage of damage/trespass to property complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date;

complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "damage/trespass to property" as the following CRMS category code: 08K. Pursuant to this amended request, see CITY-AS-014724. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

48.     For each year 2009-present, any and all documents containing information related to the number of complaints filed by or on behalf of minors against Chicago police officers, the number and percentage of complaints filed by or on behalf of minors that were sustained, and the number of complaints filed by or on behalf of minors that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs define "minors" as individuals who are age 0-17 at the time the complaint was filed and request the search of all CRMS category codes. Pursuant to this amended request, see CITY-AS-014725. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

49.     For each year 2009-present, any and all documents containing information related to the number of complaints filed on behalf of young children against Chicago police officers, the number and percentage of complaints filed on behalf of minors that were sustained, and the number of complaints filed on behalf of minors that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time

period of the search is January 1, 2009 to the present (or the date of the search) and the relevant

date range applies to the date the complaint was received, not the incident date. For each

complaint appearing in the result, the related data is to include: the CRMS code; complaint date;

complaint closed date; initial finding; final finding; initial/recommended discipline (search all

discipline codes); and final discipline (search all discipline codes). For purposes of this request,

Plaintiffs define "young children" as individuals who are age 0-7 at the time the complaint was

filed and request the search of all CRMS category codes. Pursuant to this amended request, see

CITY-AS-014726. Note that the information produced is only as reliable as the data that is

inputted into the CRMS database.

     50.    For each of year 2009-2014, any and all documents containing information
related to the number of racial discrimination/abuse/harassment complaints filed against Chicago
police officers by citizens, the number and percentage of racial discrimination/abuse/harassment
complaints that were sustained, and the number and percentage of such complaints that resulted
in the imposition of a disciplinary sanction of a suspension for longer than a week or in
termination.

    **RESPONSE:** See FCRL 1160-68. Plaintiffs have agreed that they are not requesting any

further search or materials in response to this request.

    51.    For each year 2009-present, any and all documents containing information related
to the number of neglect of duty and/or failure to intervene complaints filed against Chicago
police officers, the number and percentage of such complaints that were sustained, and the
number of neglect of duty and/or failure to intervene complaints that resulted in the imposition of
a disciplinary sanction of a suspension for longer than a week or in termination.

    **RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was

amended to seek the results of a search in electronic format showing the data requested. The time

period of the search is January 1, 2009 to the present (or the date of the search) and the relevant

date range applies to the date the complaint was received, not the incident date. For each

complaint appearing in the result, the related data is to include: the CRMS code; complaint date;

complaint closed date; initial finding; final finding; initial/recommended discipline (search all

discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "neglect of duty and/or failure to intervene" as the following CRMS category codes: 10J and 10U. Pursuant to this amended request, see CITY-AS-014727. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

52.     For each year 2009-2014, any and all documents containing information related to the number of unconstitutional seizure of property complaints filed against Chicago police officers, the number and percentage of such complaints that were sustained, and the number of unconstitutional seizure of property complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant date range applies to the date the complaint was received, not the incident date. For each complaint appearing in the result, the related data is to include: the CRMS code; complaint date; complaint closed date; initial finding; final finding; initial/recommended discipline (search all discipline codes); and final discipline (search all discipline codes). For purposes of this request, Plaintiffs have defined "unconstitutional seizure of property" as the following CRMS category codes: 04E and 08F. Pursuant to this amended request, see CITY-AS-014728. Note that the information produced is only as reliable as the data that is inputted into the CRMS database.

53.     For each year 2009-present, any and all documents containing information related to the number of use of/display of/unnecessary display of weapon complaints filed against Chicago police officers, the number of such complaints that were filed by African-American complainants, the number and percentage of all such complaints that were sustained, and the number of use of/display of/unnecessary display of weapon complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** Pursuant to an agreement with Plaintiffs, the scope of this request was amended to seek the results of a search in electronic format showing the data requested. The time period of the search is January 1, 2009 to the present (or the date of the search) and the relevant

date range applies to the date the complaint was received, not the incident date. For each

complaint appearing in the result, the related data is to include: the CRMS code; complaint date;

complaint closed date; initial finding; final finding; initial/recommended discipline (search all

discipline codes); and final discipline (search all discipline codes). For purposes of this request,

Plaintiffs have defined "use of/display of/unnecessary display of weapon" as the following

CRMS category codes: 05G and 05N. Pursuant to this amended request, see CITY-AS-014729.

Note that the information produced is only as reliable as the data that is inputted into the CRMS

database.

54.    For each year 2009-present, any and all documents containing information related
to the number of improper execution of a search warrant complaints filed against Chicago police
officers, the number and percentage of such complaints that were sustained, and the number of
improper execution of a search warrant complaints that resulted in the imposition of a
disciplinary sanction of a suspension for longer than a week or in termination.

**RESPONSE:** See FCRL 1289-90. Plaintiffs have agreed that they are not requesting any

further search or materials in response to this request.

57.    Any and all documents providing information as to the full name and star number
of each CPD officer who has received at least twenty (20) Complaints and/or ten (10) Tactical
Response Report complaints in the last five years, and, for each such officer, the disciplinary
measures that were taken in response to the complaints against the officer (i.e., the "Cline lists").

**RESPONSE:** Plaintiff has agreed that the "corrected" search that the City has run in

response to Request No. 1 satisfies this request. See CITY-AS-0147123.

58.    Any and all documents from the year 2009 through the present relating to the
Chicago Police Department's Use of Force Committee, including but not limited to any findings
or recommendations made by that committee and any changes to Chicago police policy,
procedures, or training implemented as a result of the work of the Use of Force Committee.

**RESPONSE:** The City objects to this request on the grounds it is overly broad and not

properly limited in time and scope. Subject to and without waiving the foregoing objections, and

pursuant to Rule 37.2 conferences with Plaintiffs and Plaintiffs' counsel's June 2, 2016 email,

the City agrees to produce any of the identified policies relating to use of force in effect during

the time period of August 29, 2008 through August 29, 2013, any documents showing changes made to those policies, and any documents showing training relating to excessive force during the subject time period. See CITY-AS-00001-20, 385-443, 445-466, and 3740-3854. Further materials responsive to this request that are subject to the deliberative process privilege are listed on the City's Privilege Log.

60.     Any and all documents constituting or relating to any studies or reports CPD has commissioned or completed concerning the use of force or excessive force, the implementation of an early identification or warning system to identify police officers in need of behavioral intervention, or improvement of relations between CPD and racial minorities. For each study or report, produce any and all documents relating to the consideration or evaluation of the report's or study's findings or recommendations and the implementation of any changes in CPD policy, procedures, or training.

**RESPONSE:** The City objects to this request on the grounds it is vague and overly broad as to "studies or reports" that have been "commissioned or completed" as that could apply, for example, to any report completed by an IPRA investigator pertaining to the investigation of an allegation of excessive force, any expert report pertaining to the topics listed in this request completed as part of litigation, and reports from the CRMS database or other audits listing data relating to complaints and discipline. Subject to the foregoing objections and with the understanding that Plaintiffs are not seeking the foregoing described categories of materials, the City investigated whether any studies were commissioned by the CPD concerning the topics listed in this request during the agreed-upon time period of August 29, 2008 to August 29, 2013. Based upon a reasonable search and that understanding, the City has not located any responsive documents.

61.     Any and all documents related to any studies or reports CPD has commissioned or completed concerning whether its police personnel are following CPD policies, training, and practices regarding use of force, excessive force, the use of force against minors, unnecessary display/use of weapon, and discrimination based on race (excluding racial discrimination in employment). For each report and study, please also produce all documents related to the consideration or evaluation of the report's or study's findings or recommendations and the implementation of any changes in CPD policy, procedures, or training. For each report or study

cited, produce all documents discussing any and all results, including but not limited to findings and recommendations made and/or adopted.

**RESPONSE:** The City objects to this request on the grounds it is vague and overly broad as to "studies or reports" that have been "commissioned or completed" as that could apply, for example, to any report completed by an IPRA investigator pertaining to the subject categories in the request, any expert report pertaining to the topics listed in this request completed as part of litigation, and reports from the CRMS database or other audits listing data relating to complaints and discipline. Subject to the foregoing objections and with the understanding that Plaintiffs are not seeking the foregoing described categories of materials, the City investigated whether any studies were commissioned by the CPD concerning the topics listed in this request during the agreed-upon time period of August 29, 2008 to August 29, 2013. Based upon a reasonable search and that understanding, the City has not located any responsive documents.

62.    Any and all records, notes, and other documents created by those in supervisory positions over the Individual Police Defendants relating to the review and monitoring of the officers' performance, activities, and duties in their employment with CPD from the defendants' dates of hire to the present.

**RESPONSE:** The City objects to this request as vague. Subject to the foregoing objection and based on the agreement and clarification by Plaintiffs during Rule 37.2 conferences, the City agrees to produce any performance evaluations and psychological evaluative tests of the Individual Police Defendants in response to this request. See CITY-AS-003937-4027.

69.    Any and all CPD general orders, special orders, department notices, handbooks, rules, regulations, form sets, and other Chicago Police Department rules, policies, procedures, or practices that relate to the following topics:

A.    Entry into and/or searches of residences or homes;

B.    The use of force (including the drawing of a weapon) and the use of physical restraint;

C.   The use of force or restraint (including the drawing of a weapon) against a minor;

D.   The use of force or restraint (including the drawing of a weapon) against a minor, including the use of force against and/or in the presence of, young children;

E.   The use of force or restraint (including the drawing of a weapon) against a young minor's parent(s) when the minor is present;

F.   Destruction of or damage to personal property belonging to civilians;

G.   Theft of personal property belonging to civilians;

H.   The maintenance of photographs or digital images of Chicago police personnel;

I.   Documents that explain the abbreviations, codes, and symbols contained in the Department's computer disciplinary summaries or complaint histories of Chicago police officers;

J.   The procedures by which supervisors in the Chicago Police Department supervise and monitor the performance, daily activities, and job duties of tactical and patrol officers;

K.   The procedures for investigating misconduct complaints against Chicago police officers;

L.   The procedures related to the imposition of disciplinary action against Chicago police officers;

M.   The Behavioral Alert, Behavioral Intervention, and Personnel Concerns programs;

N.   The procedures used by IAD and IPRA to identify Chicago police officers charged with misconduct pursuant to a civilian complaint or civil/criminal lawsuit;

O.   Improving the relationship between the Chicago Police Department and the public, including but not limited to members of racial minorities;

P.   The criteria, data, reports, and mechanisms that are used, reviewed, or made by supervisors to review or evaluate the performance of patrol officers;

Q.   The ways that supervisory evaluation of officer job performance, performance evaluations and ratings are used or taken into account in disciplinary, promotional, assignment, or salary decisions;

R.     Early warning systems for the identification of police officers who are or may be in need of behavioral intervention;

S.     Proper and improper searches of homes, residences, and persons, including but not limited to proper and improper methods of executing a search warrant and seizure of property;

T.     Chicago Police Department Procedures specific to police encounters with minors generally;

U.     Chicago Police Department Procedures specific to police encounters with young children;

V.     Chicago Police Department Procedures specific to police encounters with a young child's parent(s) when the young child is present;

W.     Chicago Police Department policies and procedures regarding an officer's duty to intervene when s/he sees a fellow officer: (1) engage in excessive force or restraint with a citizen; (2) engage in verbal abuse with a citizen; (3) improperly seize a citizen's property; (4) unnecessarily display his/her weapon in a threatening manner; (5) point a loaded revolver at a three-year old child; (6) unnecessarily damage the personal property of a citizen; (7) convert the cash or other personal property of a citizen; (8) improperly execute a search warrant; or (9) engage in any other misconduct;

X.     The Code of Silence within the Chicago Police Department, whereby police officers "conceal each other's misconduct in contravention of their sworn duties," thus encouraging "police officers to engage in misconduct with impunity and without the fear of official consequences." Obrycka v. City of Chicago, 2012 U.S. Dist. LEXIS 22818, 19-20 (N.D. Ill. Feb. 23, 2012);

Y.     Chicago Police Department policy and procedure regarding punishment or discipline of Chicago Police officers found to engage in a Code of Silence to cover up their own or a fellow officer's misconduct;

Z.     referrals of citizen complaints alleging the use of excessive force by Chicago police officers to the Cook County State's Attorney's Office for possible criminal prosecution;

Z.     any protections offered by the Chicago Police Department to Chicago police officers who report having observed police misconduct;

AA.     tactical teams, including but not limited to the process of selecting officers for participation or inclusion in tactical teams, and monitoring the performance of members of tactical teams;

BB.     any systems in place from 2000 to present for identifying Chicago police officers who were or may have been in need of behavioral intervention, including but not limited to the Behavioral Alert Program, and the Personnel Concerns Program;

CC.     any systems in place from 2000 to present for tracking the number of arrests made by individual officers for the following charges: resisting arrest, obstruction of justice, resisting or obstructing a peace officer, and battery of a peace officer.

**RESPONSE:** Plaintiffs have narrowed this request to seek directives, in effect from August 29, 2008 to August 29, 2013 pertaining to subparts A-G and S-W only, and as further clarified by Plaintiffs' June 2, 2016 email. Following a reasonable search, the City produced the following in response to the amended request: CITY-AS-000001-429, 467-680, 4075-4085, 4177-4203, 12649-12655.

70.     All manuals, instructional or training materials, training bulletins, and other documents or memoranda used to provide training, education or information to members of the Chicago Police Department that relate to the following subject areas:

A.     Entry into and/or searches of residences or homes;

B.     The use of force (including the drawing of a weapon) and the use of physical restraint;

C.     The use of force or restraint (including the drawing of a weapon) against a minor;

D.     The use of force or restraint (including the drawing of a weapon) against a minor, including the use of force against and/or in the presence of, young children;

E.     The use of force or restraint (including the drawing of a weapon) against a young minor's parent(s) when the minor is present;

F.     Destruction of or damage to personal property belonging to civilians;

G.     Theft of personal property belonging to civilians;

H.     The maintenance of photographs or digital images of Chicago police personnel;

I.     Documents that explain the abbreviations, codes, and symbols contained in the Department's computer disciplinary summaries or complaint histories of Chicago police officers;

J.     The procedures by which supervisors in the Chicago Police Department supervise and monitor the performance, daily activities, and job duties of tactical and patrol officers;

K.     The procedures for investigating misconduct complaints against Chicago police officers;

L.     The procedures related to the imposition of disciplinary action against Chicago police officers;

M.     The Behavioral Alert, Behavioral Intervention, and Personnel Concerns programs;

N.     The procedures used by IAD and IPRA to identify Chicago police officers charged with misconduct pursuant to a civilian complaint or civil/criminal lawsuit;

O.     Improving the relationship between the Chicago Police Department and the public, including but not limited to members of racial minorities;

P.     The criteria, data, reports, and mechanisms that are used, reviewed, or made by supervisors to review or evaluate the performance of patrol officers;

Q.     The ways that supervisory evaluation of officer job performance, performance evaluations and ratings are used or taken into account in disciplinary, promotional, assignment, or salary decisions;

R.     Early warning systems for the identification of police officers who are or may be in need of behavioral intervention;

S.     Proper and improper searches of homes, residences, and persons, including but not limited to proper and improper methods of executing a search warrant and seizure of property;

T.     Chicago Police Department Procedures specific to police encounters with minors generally;

U.     Chicago Police Department Procedures specific to police encounters with young children;

V.     Chicago Police Department Procedures specific to police encounters with a young child's parent(s) when the young child is present;

W. Chicago Police Department policies and procedures regarding an officer's duty to intervene when s/he sees a fellow officer: (I) engage in excessive force or restraint with a citizen; (2) engage in verbal abuse with a citizen; (3) improperly seize a citizen's property; (4) unnecessarily display his/her weapon in a threatening manner; (5) point a loaded revolver at a three-year old child; (6) unnecessarily damage the personal property of a citizen; (7) convert the cash or other personal property of a citizen; (8) improperly execute a search warrant; or (9) engage in any other misconduct;

X. The Code of Silence within the Chicago Police Department, whereby police officers "conceal each other's misconduct in contravention of their sworn duties," thus encouraging "police officers to engage in misconduct with impunity and without the fear of official consequences." Obrycka v. City of Chicago, 2012 U.S. Dist. LEXIS 22818, 19-20 (N.D. Ill. Feb. 23, 2012);

Y. Chicago Police Department policy and procedure regarding punishment or discipline of Chicago Police officers found to engage in a Code of Silence to cover up their own or a fellow officer's misconduct;

Z. referrals of citizen complaints alleging the use of excessive force by Chicago police officers to the Cook County State's Attorney's Office for possible criminal prosecution;

Z. any protections offered by the Chicago Police Department to Chicago police officers who report having observed police misconduct;

AA. tactical teams, including but not limited to the process of selecting officers for participation or inclusion in tactical teams, and monitoring the performance of members of tactical teams;

BB. any systems in place from 2000 to present for identifying Chicago police officers who were or may have been in need of behavioral intervention, including but not limited to the Behavioral Alert Program, and the Personnel Concerns Program;

CC. any systems in place from 2000 to present for tracking the number of arrests made by individual officers for the following charges: resisting arrest, obstruction of justice, resisting or obstructing a peace officer, and battery of a peace officer.

**RESPONSE:** The City objected to this request as overly broad and unduly burdensome.

Plaintiffs have narrowed this request to seek training materials, in effect from August 29, 2008 to

August 29, 2013 pertaining to subparts A-G and S-W only. Following a reasonable search, the

City produced the following in response to the amended request: CITY-AS-000001-680, 3740-3854, 4075-4085, 4177-4203, 12649-12655.

74.     Any and all documents related to the Chicago Police Department's study or evaluation of best police practices to identify police officers in need of behavioral intervention.

**RESPONSE:** The City objects to this request on the grounds that "in need of behavioral intervention" is vague and subject to multiple interpretations. Subject to the foregoing objection, and to the agreed upon scope of time August 29, 2008 through August 29, 2013, and based upon a reasonable search, the City identifies responsive materials that are subject to the deliberative process privilege on the Privilege Log.

75.     Any and all documents relating to or containing communications from 2009 through the present between the Chicago Police Department and the City of Chicago, Mayor Rahm Emmanuel, Mayor Richard Daley or their respective offices regarding:

    A.    Entry into and/or searches of residences or homes;

    B.    The use of force (including the drawing of a weapon) and the use of physical restraint;

    C.    The use of force or restraint (including the drawing of a weapon) against a minor;

    D.    The use of force or restraint (including the drawing of a weapon) against a minor, including the use of force against and/or in the presence of, young children;

    E.    The use of force or restraint (including the drawing of a weapon) against a young minor's parent(s) when the minor is present;

    F.    Destruction of or damage to personal property belonging to civilians;

    G.    Theft of personal property belonging to civilians;

    H.    The maintenance of photographs or digital images of Chicago police personnel;

    I.    Documents that explain the abbreviations, codes, and symbols contained in the Department's computer disciplinary summaries or complaint histories of Chicago police officers;

J. The procedures by which supervisors in the Chicago Police Department supervise and monitor the performance, daily activities, and job duties of tactical and patrol officers;

K. The procedures for investigating misconduct complaints against Chicago police officers;

L. The procedures related to the imposition of disciplinary action against Chicago police officers;

M. The Behavioral Alert, Behavioral Intervention, and Personnel Concerns programs;

N. The procedures used by IAD and IPRA to identify Chicago police officers charged with misconduct pursuant to a civilian complaint or civil/criminal lawsuit;

O. Improving the relationship between the Chicago Police Department and the public, including but not limited to members of racial minorities;

P. The criteria, data, reports, and mechanisms that are used, reviewed, or made by supervisors to review or evaluate the performance of patrol officers;

Q. The ways that supervisory evaluation of officer job performance, performance evaluations and ratings are used or taken into account in disciplinary, promotional, assignment, or salary decisions;

R. Early warning systems for the identification of police officers who are or may be in need of behavioral intervention;

S. Proper and improper searches of homes, residences, and persons, including but not limited to proper and improper methods of executing a search warrant and seizure of property;

T. Chicago Police Department Procedures specific to police encounters with minors generally;

U. Chicago Police Department Procedures specific to police encounters with young children;

V. Chicago Police Department Procedures specific to police encounters with a young child's parent(s) when the young child is present;

W. Chicago Police Department policies and procedures regarding an officer's duty to intervene when s/he sees a fellow officer: (I) engage in excessive force or restraint with a citizen; (2) engage in verbal abuse with a citizen; (3) improperly seize a citizen's property; (4) unnecessarily display his/her

weapon in a threatening manner; (5) point a loaded revolver at a three-year old child; (6) unnecessarily damage the personal property of a citizen; (7) convert the cash or other personal property of a citizen; (8) improperly execute a search warrant; or (9) engage in any other misconduct;

X.   The Code of Silence within the Chicago Police Department, whereby police officers "conceal each other's misconduct in contravention of their sworn duties," thus encouraging "police officers to engage in misconduct with impunity and without the fear of official consequences." Obrycka v. City of Chicago, 2012 U.S. Dist. LEXIS 22818, 19-20 (N.D. Ill. Feb. 23, 2012);

Y.   Chicago Police Department policy and procedure regarding punishment or discipline of Chicago Police officers found to engage in a Code of Silence to cover up their own or a fellow officer's misconduct;

Z.   referrals of citizen complaints alleging the use of excessive force by Chicago police officers to the Cook County State's Attorney's Office for possible criminal prosecution;

AA.   any protections offered by the Chicago Police Department to Chicago police officers who report having observed police misconduct;

BB.   tactical teams, including but not limited to the process of selecting officers for participation or inclusion in tactical teams, and monitoring the performance of members of tactical teams;

CC.   any systems in place from 2000 to present for identifying Chicago police officers who were or may have been in need of behavioral intervention, including but not limited to the Behavioral Alert Program, and the Personnel Concerns Program;

DD.   any systems in place from 2000 to present for tracking the number of arrests made by individual officers for the following charges: resisting arrest, obstruction of justice, resisting or obstructing a peace officer, and battery of a peace officer.

**RESPONSE:** The City objected to this request as overly broad, unduly burdensome, seeking material subject to the deliberative privilege, and on the grounds it is not properly limited in time and scope. As a compromise, Plaintiffs agreed to narrow the scope of this request to the subparagraphs A through G and to identify which individuals' email accounts and communications should be searched. As Plaintiffs have not further identified the requested scope of the search, the City has no responsive documents to produce at this time.

76.    Any and all documents reflecting the number of referrals of excessive force complaints to the Cook County State's Attorney's Office for possible criminal prosecution from 2009 to 2014.

**RESPONSE:** Plaintiffs agreed to narrow this request to referrals of non-shooting incidents of excessive force. Pursuant to this agreement, see CITY-AS-009438-12648 reflecting IPRA's referrals.[1]

78.    Any and all documents, including transcripts, letters, e-mail, and resolutions, generated by any party during police contract negotiations relating to any contract provisions addressing whether or not Chicago police officers may be rewarded in any way for reporting their own misconduct or the misconduct of other Chicago police officers.

**RESPONSE:** Through Rule 37.2 conferences relating to this request, Plaintiffs clarified and amended the request to seek documents from police contract negotiations regarding any contract provisions indicating whether officers may be rewarded for reporting misconduct for the agreed-upon time period of August 29, 2008 through August 29, 2013. Following a reasonable search of the records held by the Chicago Police Department's Management Labor Affairs Section and the City's Chief Labor Negotiator during the relevant time period regarding a contract provision relating to whether an officer may be rewarded for reporting misconduct, the City did not locate any responsive non-privileged documents. The City identifies a responsive document that is subject to the deliberative process on the Privilege Log.

79.    Any and all documents related to reports of police misconduct dated 2009 to 2014, in which a Chicago police officer reports having observed a fellow Chicago police officer using excessive force, performing an illegal search, or engaging in any mistreatment of civilians.

**RESPONSE:** The City objected to this request on the grounds the phrase "mistreatment of civilians" is vague, and to the extent this request seeks information outside of the possession, custody, or control of the City. Subject to and without waiving any objection, the City engaged

---

[1] The City has made an effort to redact any material relating to juveniles in these records. Should Plaintiffs' counsel see that any juvenile information in the records was inadvertently disclosed, the City asks that Plaintiffs' counsel should report that disclosure to the City's counsel as soon as possible.

in Rule 37.2 conferences with Plaintiffs regarding this request. It is the City's understanding that Plaintiffs are seeking information that is available through searches of the City's complaint database showing complaints filed by a police officer, on behalf of him or herself, to report misconduct (within the categories described in this request) by another CPD police officer. The City is unable to produce reliable responsive information through a search of the City's databases as the result would be over-inclusive. Results showing complaints filed by Chicago police officers would include complaints filed by Chicago police officers on behalf of civilian complaints.

80.     Any and all performance evaluations (dated from 2009 through 2014) of Chicago police officers that reflect any consideration of the number or content of any Complaint Registers lodged against the Chicago police officer whose performance is being reviewed.

**RESPONSE:** The City objects to this request as vague. Based upon Rule 37 conferences and correspondence (see August 24, 2016 email from Plaintiffs' counsel), the City understands this request to be amended to seek all performance evaluations of the individual defendant officers. See CITY-AS-003937-4027.

86.     Any and all written policies, procedures, and manuals related to monitoring of police activity by the Chicago City Council, including the Police and Fire Committee of the City Council.

**RESPONSE:** The City objected to this request as overly broad, not reasonably limited in time and scope, not reasonably calculated to lead to the discovery of admissible evidence, and as unduly burdensome. Pursuant Rule 37 conferences, Plaintiffs agreed to limit the documents responsive to this request to any meetings and agendas of the following Committees and Joint Committees of the City Council during the time period of August 29, 2008 and August 29, 2013: City Council, Committee on Public Safety (formerly Police and Fire), Finance Committee, Budget Committee, Committee on Budget and Government Operations, Joint Committee: Finance; Budget and Government Operations, and Joint Committee: Finance/Public Safety.

Following a reasonable search, the City produces the following responsive documents: CITY-AS-004024-4378, 12656-14712. The City further produces certain reports by the Independent Police Review Authority to the City Council and other City Council documents: CITY-AS-000681-786, 6380-9437.

88. Any and all documents describing the contents of computerized databases, computer programs, or information systems used by the Chicago Police Department from 2010 to the present to track or detect police officer performance and/or problematic police behavior, including but not limited to any and all documents detailing what input fields are used in such databases, programs or systems, and how those input fields are used to detect patterns of police performance and/or problematic police behavior.

**RESPONSE:** The City objected to this request on the grounds the phrase "problematic police behavior" is vague and ambiguous. The City further objects to the phrase "documents describing the contents" as vague. Pursuant to Rule 37 conferences with Plaintiffs, the City agreed to produce documents showing data fields that appear in systems used by the CPD to store data relating to disciplinary complaints. See CITY 004087-004113.

89. Any and all documents reflecting the number of officers referred to the following programs from 2009 through 2014, and the reasons for any such referrals:

      A.     Behavioral Intervention System;

      B.     Behavioral Alert System;

      C.     Personnel Concerns Program; and

      D.     Early Intervention/Counseling.

**RESPONSE:** The City objected to this request as overly broad and as seeking irrelevant information about officers who are not Defendants in this matter. Pursuant to Rule 37 conferences and correspondence with Plaintiffs, Plaintiffs amended and narrowed the request to seek referrals for the categories of excessive force, for excessive force with minors, for unnecessary display/use of weapon, for damage to property/excessive destruction of property in connection with executing a search warrant, improper execution of search warrants and theft

25

during the time period of August 29, 2008 through August 29, 2013. Following a reasonable search of the documents held by the Human Resources Department of Chicago Police Department, the City has not located any responsive documents. Answering further, during the requested time period, 58 Chicago Police Department members were referred to the Behavioral Intervention System and 5 Chicago Police Department members were referred to the Personnel Concerns Program. These numbers reflect all referrals, irrespective of any particular category of referral.

90.     Any and all documents reflecting the manner in which the Office of Professional Standards and/or the Internal Affairs Division review disciplinary records to identify those members who display a pattern of behavior that may require a recommendation to the Personnel Division Director for placement into the Behavioral Intervention System.

**RESPONSE:** The City objects to this request on the grounds the phrases "reflecting the manner" and "may require a recommendation" are vague and subject to multiple interpretations and that it is overly broad and not properly limited in time and scope. Subject to and without waiving the foregoing objections, and based upon clarifications through Rule 37.2 conferences with Plaintiffs' counsel, the City agrees to produce any directives or guidelines reflecting the procedures for identifying members for referrals to the Behavioral Intervention System in effect during the time period of August 29, 2008 through August 29, 2013. The City also produces Quarterly Analytic Reports created by the Bureau of Internal Affairs, which are responsive to this request. See FCRL 003861-3867 and CITY-AS-000372-384, 2653-2737.

91.     Any and all documents reflecting any procedures, practices or guidelines followed by the Assistant Deputy Superintendent, IAD, and the senior personnel of IPRA in reviewing incoming and current complaint register cases to determine if the behavior of any accused Department member fits the criteria for inclusion in the Personnel Concerns Program.

**RESPONSE:** The City objects to this request based on facts not in evidence as to procedure for enrollment in the Personnel Concerns Program. Subject to and without waiving the foregoing objections, and based upon clarifications through Rule 37.2 conferences with

Plaintiffs' counsel, the City agrees to produce any directives or guidelines relating to the Personnel Concerns Program that were in effect during the time period of August 29, 2008 through August 29, 2013. The City also produces Quarterly Analytic Reports created by the Bureau of Internal Affairs, which are potentially responsive to this request. See FCRL 003868-3874 and CITY-AS-002733-3739.

92.     Any and all documents reflecting any procedures, practices or guidelines followed by command and supervisory members in monitoring the performance of their subordinates, in identifying Department members who may be exhibiting certain behavioral intervention indicators to be placed in the Behavioral Intervention System, and in identifying members experiencing performance problems.

**RESPONSE:** The City objected to this request as vague on the grounds the phrases "reflecting any procedures, practices, or guidelines," "may be exhibiting" and "performance problems" are vague and subject to multiple interpretations and that it is overly broad and not properly limited in time and scope. Subject to and without waiving the foregoing objections, and based upon clarifications through Rule 37.2 conferences with Plaintiffs' counsel, the City agrees to produce any directives or guidelines that were in effect during the time period of August 29, 2008 through August 29, 2013 relating to the Behavioral Intervention System, other Early Intervention Programs, and Performance Evaluation. See FCRL 003861-74 and CITY-AS-000295-336, and 346-384.

93.     Any and all documents reflecting any procedures, practices or guidelines followed by watch supervisors in monitoring the performance of all employees, or followed by exempt commanding officers in recommending to the Director, Personnel Division that a member be placed in the Personnel Concerns Program.

**RESPONSE:** The City objected to this request as vague on the grounds the phrases "reflecting any procedures, practices, or guidelines," "may be exhibiting" and "performance problems" are vague and subject to multiple interpretations and that it is overly broad and not properly limited in time and scope. Subject to and without waiving the foregoing objections, and

based upon clarifications through Rule 37.2 conferences with Plaintiffs' counsel, the City agrees to produce any directives or guidelines that were in effect during the time period of August 29, 2008 through August 29, 2013 relating to the Personnel Concerns Program. See See FCRL 003868-3874.

94.     Any and all documents reflecting any procedures, practices or guidelines followed by watch commanders in gathering and reviewing all pertinent, documentation and unit records concerning an accused officer's past work performance and disciplinary history.

**RESPONSE:** The City objects to this request on the grounds the phrases "reflecting any procedures, practices, or guidelines" and "past work performance" are vague and subject to multiple interpretations, that it seeks information subject to the deliberative privilege, and that it is overly broad and not properly limited in time and scope. Subject to and without waiving these objections, and based upon further Rule 37.2 conferences and correspondence with Plaintiffs, the City agreed to produce all performance evaluations of the Individual Defendant Officers. See CITY-AS-003937-004027.

95.     Any and all documents reflecting the total amount of money allocated to CPD's Office of Professional Standards and, now, IPRA on an annual basis from 2000 through the present, and, for each of the years 2000 through the present, the percentage of the total annual Chicago Police Department budget that is represented by the money allocated to the Office of Professional Standards/IPRA.

**RESPONSE:** The City objects to this request as not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and subject to Rule 37.2 conferences with Plaintiffs, the City agreed to produce budgets reflecting the amount of money allocated to OPS/IPRA for the agreed upon time period is August 29, 2008 through August 29, 2013. See CITY-AS-006380-9322.

96.     Any and all documents reflecting details of the annual operating budget of the Chicago Police Department's Office of Professional Standards and, now, IPRA, from 2000

through the present, including the source of any funds allocated to the Office of Professional Standards/IPRA, and the manner in which such funds were spent.

**RESPONSE:** The City objects to this request as not reasonably limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and subject to Rule 37.2 conferences with Plaintiffs, the City agreed to produce budgets reflecting the amount of money allocated to OPS/IPRA and showing certain allocations with OPS/IPRA for the agreed upon time period is August 29, 2008 through August 29, 2013. See CITY-AS-006380-9322.

97.     Any and all documents reflecting the number of full-time investigators employed by the Office of Professional Standards/IPRA from 2000 to the present.

**RESPONSE:** The City objects to this request as not reasonably limited in time and scope, and as not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and subject to Rule 37.2 conferences with Plaintiffs, the City agreed to produce certain documents that reflect the number of full-time investigators employed by OPS/IPRA for the agreed upon time period is August 29, 2008 through August 29, 2013. See CITY-AS-746-786, 2119, 9327-9437.

100.    Regarding the documents that Defendants produced in their joint 26(a)(1) disclosures to Plaintiffs in this case, please produce the following:

    E.      Original, color photograph versions of the black and white photocopies produced, including a disc containing any original digital images of each and every photograph taken with a digital camera;

    F.      Original, color photographs, including a disc containing any original digital images of each and every photograph taken with a digital camera, of any photographs taken in relation to the search warrant and arrests of August 28, 2013 and August 29, 2013, but not produced to plaintiffs in defendants' joint 26(a) disclosures;

**RESPONSE:** Pursuant to Rule 37.2 conferences with Plaintiffs, the City produced digital copies of the requested photographs (see CITY-AS-000787). Versions of the photographs were previously produced as FCRL 001293-001307.

### Amended Responses to Plaintiffs' Third Set of Requests for Production

105.    (a) Each "pattern analysis" performed on a Chicago police officer, 2008 - 2013, (b) all documents showing that such officers were flagged and tracked, and (c) all documents indicating that any civilian complaints or investigative findings against such officers were taken into account when reviewing officer performance and/or eligibility for promotion, raise, overtime or bonus.

**RESPONSE:** The City objects to this request on the grounds that the phrases "pattern analysis," "flagged and tracked," "taken into account," and "when reviewing officer performance" are vague and undefined, and that the request for such information on all officers within this time period is overly broad and unduly burdensome. Subject to and without waiving these objections, and based upon Rule 37.2 conferences with Plaintiffs, the City understands that Plaintiffs are not requesting that the City conduct an individualized review of all investigation files or other instances in which a CPD or IPRA employee reviewed an officers' complaint history. Based upon these understandings, the City responds that it does not have any electronic data showing each instance in which a CPD or IPRA employee reviewed an officer's complaint history during the relevant time period for purposes of "tracking" or "reviewing officer performance," to the extent those phrases are understood. Further, as to subparagraph (c), the City produces directives responsive to this request. See CITY-AS-000332-336, 343-345, 4079-82, and 4083-85. The City objects to any remaining documents or data requested as vague and overly broad.

106.    (a) All documents relating to occasions when CPD's use of force directives have been reviewed by CPD and (b) all documents constituting research and development guides relating to CPD's use of force model and/or CPD's policies (general orders, rules and directives) regarding the use of force, including all recommendations for proposed changes thereto and all corresponding changes in officer training.

**RESPONSE**: The City objects to this request, on the grounds that the phrases "reviewed by CPD" is vague. Subject to and without waiving these objections, and based upon Rule 37.2 conferences with Plaintiffs, the City understands that it Plaintiffs are seeking "all reviews" of CPD's use of force directives during the relevant time period. In response to this request the City agreed to identify all changes in the subject directives during the time period of August 29, 2008 through August 29, 2013. See CITY-AS-00001-20, 385-443, 445-466, and 3740-3854. Additional responsive documents relating to changes or proposed changes to policies relating to use of force are subject to the deliberative process privilege and listed on the Privilege Log.

107.    All documents describing each behavioral intervention program for CPD officers, including the "BIS" program and including policies pursuant to which officers are flagged and tracked.

**RESPONSE**: The City objected to this request on the grounds that "all documents describing each behavioral intervention program for CPD" is overly broad, unduly burdensome, and not sufficiently limited in time and scope, and on the grounds that "flagged and tracked" is vague. Subject to and without waiving these objections, and pursuant to Rule 37.2 conferences discussion with Plaintiffs, the City agreed to search for potentially responsive Chicago Police Department directives from the agreed five-year period relating to behavioral intervention programs within the CPD. Based on a reasonable search based on this agreement, the City produces the following responsive documents: FCRL 003861-3874 and CITY-AS-000295-300, 379-384.

108.    (a) All documents consisting of proposals, made or considered by CPD during 2008 - 2013, for changes to CPD's disciplinary system for officers found to engage in misconduct; and (b) all documents indicating whether the proposals were adopted in some form.

**RESPONSE**: The City objects to this request to the extent it is not sufficiently limited in time and scope. Subject to and without waiving these objections, and based upon the City's understanding of the request pursuant to Rule 37.2 conferences with Plaintiffs, the City searched

for documents showing the CPD's review and development of changes to directives relating to CPD's disciplinary system within the relevant time period. Documents showing the implemented directives relating to CPD's disciplinary systems are as follows: CITY-AS-000173-293. Further responsive documents subject to the deliberative process privilege are listed on the Privilege Log.

110. All records and other documents underlying Mayor Rahm Emanuel's statement, before the Chicago City Council on December 9, 2015, that "the police culture" "allows" and "enables" incidents like the Laquan McDonald killing to happen. (Prepared remarks, page 1).

**RESPONSE**: The City objected to this request on the grounds that "documents underlying" is vague, and that the statements referenced in this request were made after the underlying incident in this matter, and thus this request seeks information not relevant to the essential elements of Plaintiffs' *Monell* claims. Subject to the foregoing objections, and pursuant to Rule 37.2 conferences with Plaintiffs, Plaintiffs agreed to produce a proposed stipulation for the City's consideration in lieu of the City producing responsive documents, if any.

111. All records and other documents underlying the Mayor Rahm Emanuel's statement, on WTTW's Chicago Tonight on December 8, 2015 and before the Chicago City Council on December 9, 2015, that a "code of silence" exists within the Chicago Police Department that the Mayor wants the new leader of CPD to address. (Prepared remarks, page 6).

**RESPONSE**: The City objected to this request on the grounds that "documents underlying" is vague, and that the statements referenced in this request were made after the underlying incident in this matter, and thus this request seeks information not relevant to the essential elements of Plaintiffs' *Monell* claims. Subject to the foregoing objections, and pursuant to Rule 37.2 conferences with Plaintiffs, Plaintiffs agreed to produce a proposed stipulation for the City's consideration in lieu of the City producing responsive documents, if any.

### Amended Responses to Plaintiffs' Second Set of Requests for Production

3.     Any and all documents providing (a) information as to the full name and star number of each CPD officer who was a defendant in a federal civil rights action for excessive force in which a verdict was rendered against him or her at any time between January 1, 2010 through the present and (b) for each officer, the disciplinary measures that CPD took in response to the verdict.

**RESPONSE**: The City objects to this request as it assumes facts not in evidence, namely that disciplinary measures are taken by CPD "in response to" a verdict. The City further objects to this request as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, the City states that it does not a compiled list of all verdicts entered against CPD officers for excessive force and this information is equally accessible by Plaintiffs through the Northern District of Illinois court docket. City is unable to respond to subparagraph (b) based on the foregoing objection.

4.     Any and all documents constituting or referencing policies and procedures of CPD concerning which disciplinary measures are or should be meted out to officers (1) against whom complaint of excessive force are sustained; (2) against whom verdicts in federal civil rights lawsuits alleging excessive force have been rendered; and/or (3) who receive additional civilian complaints of excessive force after receiving a sustained complaint for excessive force or after having a verdict entered against them in a federal civil rights suit for excessive force (i.e., "repeat offenders").

**RESPONSE**: The City objects to this request on the grounds the phrase "constituting or referencing the policies and procedures of CPD" is vague. As to subsection (1), based upon Rule 37.2 conferences with Plaintiffs and further clarifications as to this request, the City agrees to produce directives regarding discipline. See CITY-AS-000173-260. As to subsection (2), the City does not have specific policies as to the imposition of discipline based upon a verdict in a civil lawsuit. As to subsection (3), the City does not impose discipline based upon an officer's receipt of "additional complaints of excessive force." Discipline is only imposed based upon a sustained complaint. The City therefore does not have any documents responsive to subsection (3).

Dated: November 18, 2016

Respectfully submitted,

One of the Attorneys for Defendant,
CITY OF CHICAGO

Terrence M. Burns
Harry N. Arger
Daniel M. Noland
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700 (telephone)
(312) 876-1155 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2016, I served the foregoing by email and U.S.

Mail to:

Al Hofeld , III
Hanan Erikat Van Dril
Law Offices of Al Hofeld, III, LLC
1525 East 53rd St., Suite 832
Chicago, IL 60615
(773) 241-5844
(773) 241-5845 (fax)

Kenneth M. Battle
Winnefred A. Monu
Hickey, O'Connor & Battle LLP
20 N. Clark St., Suite 1600
Chicago, IL 60602
(312) 422-9400
(312) 422-9410 (fax)

Molly E. Thompson