# Exhibit 12

# REITER BURNS LLP

Reiter Burns LLP
311 S. Wacker Drive
Suite 5200
Chicago, IL 60606
(312) 982-0090

**Daniel M. Noland**
dnoland@reiterburns.com

February 5, 2018

Via Email

Scott Rauscher
Loevy & Loevy
311 N. Aberdeen, 3rd Fl.
Chicago, IL 60607

Al Hofeld, Jr.
Law Offices of Al Hofeld, III., LLC
1525 East 53rd St., Suite 832
Chicago, IL 60615

Re: *Aretha Simmons, et al. v. The City of Chicago, et al.*
Case No. 14 C 9042

Dear Mr. Hofeld and Mr. Rauscher:

Thank you for your Saturday correspondence and follow up inquiries and taking the time Sunday to discuss the case. We write by way of response. Throughout the discovery process, Al and Molly Thompson diligently and cooperatively worked through dozens if not hundreds of discovery items to provide plaintiffs with information requested: there clearly was an open line of communication. Some of those items involved were the production of complaint register or complaint log files ("CRs") of the defendant officers and statistical information relating to CR files generally. It is our understanding that plaintiffs were not asking for all defendant officers CR files but were reviewing CR histories as well as face sheets and summary reports where provided (as well as lawsuits) and identifying what CRs plaintiffs wanted. Among others, plaintiffs were aware of CR Numbers 1078961 (Emmanuel Williams), 1080515 (Emanuel Williams), and 1067362 which are listed as complaint histories reviewed and provided to plaintiffs. With respect to Emmanuel Williams, plaintiffs' counsel asked questions at depositions about the incident, the suit and the CR, but did not request the CR file. For instance, at Officer Suing's deposition which proceeded on August 4, 2016, Officer Suing testified there was a CR filed against him for the Emmanuel Williams case, that he was originally an accused, that he was no longer being investigated, but that he continued to be a witness in that CR investigation. (Suing deposition at 114-116). Plaintiffs' counsel raised the possibility of requesting specific CRs relating to that and other cases, and after an offer of a conference to address the matter, plaintiffs' counsel indicated that he'd talk with co-counsel and address it later. *Id*. On August 16, 2016 plaintiffs sent their Fourth Set of Discovery Requests, and asked for, among other things, certain complete CR files, including CR files relating to the *White v. Hefel* litigation. Plaintiffs did not request the CR file relating to the Emmanuel Williams case. On September 27, 2016, plaintiffs' counsel wrote an email to counsel stating he identified additional CRs by cross-referencing with the Invisible Institute's Complaint Database. The Invisible Institute Database spreadsheets from June 2016, provided by Mr. Hofeld, contained 1067362, 1078961, and 1080515 in connection with the defendant officers who were accused in those cases, among others. Moreover, by way of supplementation, on or about March 2, 2017, Molly produced CR summaries of the defendant officers dated February 27, 2017 which again

Scott Rauscher
Al Hofeld, Jr.
February 5, 2018
Page 2

specifically identified these CRs (see CITY-AG-018164-163). Plaintiffs' counsel provided those CR summaries to plaintiffs' expert who relied on them in his report. (*See* Stan Smith Expert Report at p. 4).

This past week, in advance of trial, we followed up with CPD as to the status of those files (which still appear open on the January 31, 2018 CR histories we tendered), and produced the information with our Friday, February 2, 2018 letter. We advised in our letter we would get you the video evidence from that incident that has not yet been provided to us. In your letter you state that you "cannot agree that you will produce the video whenever you receive it." As we discussed, we apologize if our letter gave the impression that we had not asked for or were not pressing for the video evidence from CPD: we have and are. We simply don't have it now but are working to get it today (and will let you know today if there is any issue).

In your letter you also request Confidential CR#1078961 (also relating to the Emmanuel Williams case). As you know, CPD doesn't ordinarily produce open CR numbers pursuant to the law enforcement privilege, especially ones from the Confidential Investigations Section as they often involve allegations of potential criminal responsibility. However, per your request, we again followed up with CPD this morning, advised them of your concerns, and asked for the file immediately. Based on our discussion with Office of Legal Affairs, we expect to be able to produce that file today as well and will let you know immediately if there are any issues. We did inquire about whether the compelled statements of Wrigley, O'Keefe, and Kinnane from CR#1080515 had been transcribed, and CPD is following up on that inquiry. As for audio of the October statements of O'Keefe and Wrigley, as we noted yesterday, those are at 23416-17.

With respect to your inquiry when lawyers involved in the case from our office (including Molly and Harry Arger who were handling the case at our former office) learned Wrigley and O'Keefe had been stripped of their police powers, as we discussed yesterday, we learned on late Monday afternoon of this past week (*i.e.* January 29, 2018) when we met with Officer Wrigley for the first time. You asked in our call yesterday that we speak with Matt Dixon and Jonathan Green, who previously handled the case. We spoke with them this morning and both advised us they did not know Wrigley and O'Keefe had been stripped. With respect to the distribution of the Notification of Duty Restrictions memos, as we discussed yesterday, the memos indicate at the bottom they are distributed to the Investigator's File at BIA, the Commanding Officer of the accused for maintenance at his unit, and the Accused Member. Per your request, we also inquired whether they are maintained in their personnel files; they are not. We agree with you that there is nothing from the depositions of Wrigley or O'Keefe that identified they had been stripped of their police powers. We are unaware of a specific request for production that would have caused the lawyers working on the case to obtain the document, but if you disagree, please advise of the specific RFP so that we can discuss it with you.

We also identified in our supplement that Babicz had a CR from 2017 (#1085310), and you request that file in your letter; we told you yesterday we would ask to get it today (it appears it

Scott Rauscher
Al Hofeld, Jr.
February 5, 2018
Page 3


was closed "NA" or No Affidavit).  As for the Rousell sustained CR, as we discussed, plaintiff did not seek information relating to Rousell's CRs since he was dismissed in December 2015. Although it hadn't been requested, in addition to follow-up inquiries relating to the defendant officers, out of an abundance of caution, we also investigated whether any of the non-defendants who might be called as witnesses at trial had any sustained CRs.  We voluntarily produced the Rousell CR now to avoid any potential issues at trial.

Very truly yours,

**REITER BURNS** LLP


s/ Daniel M. Noland
Daniel M. Noland



cc:     Kenneth Battle