IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARETHA SIMMONS, et al. | ) | Case No. 1:14-cv-09042 |
| | ) | |
| Plaintiffs, | ) | Hon. Matthew F. Kennelly |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUPPLEMENT TO THEIR MOTION FOR SANCTIONS
FOR PERJURY AND DISCOVERY VIOLATIONS**

This Supplement is being filed to update the Court about recent developments since Plaintiffs filed their motion for sanctions last week. After Plaintiffs filed that motion, the City produced additional documents that it admits it was required to produce during discovery. These new developments and evidence further support the need for a judicial remedy. Even the City admits that it should have produced the new documents during discovery.

Specifically, on Friday, February 9, 2018, after Plaintiffs filed their motion for sanctions, the City produced additional files for some of the Defendant Officers. Although the City is attempting to give these files a label other than "personnel files," which Plaintiffs requested and the Court ordered the City to produce more than two years ago, the newly-produced files contain all of the types of documents one would expect to see in a personnel file: the notifications of duty restrictions stripping Wrigley and O'Keefe of their police powers; memoranda regarding the removal of police powers; performance counseling documents; documents relating to an officer's suspension and the settlement of a related grievance regarding the suspension; documents describing life-threatening

incidents where the officers were shot at, etc.[1] Indeed, based on conversations with counsel for the City on February 10 and February 11, Plaintiffs are able to represent to the Court that the City concedes that it should have produced these files during discovery. Even without that concession, however, there is no question but that its failure to produce these personnel files was a discovery violation: the Court specifically ordered the City to produce personnel files. *See* Dkt. 114.

The City's cover letter characterized its February 9, 2018 production as the "unit files" for Officers Wrigley, O'Keefe, Suing, Homer and Babicz. Ex. 1 (February 9, 2018 cover letter from D. Noland). The "unit files" consist of over 200 pages of information. Exs. 2-3 (Unit Files of O'Keefe and Wrigley). As of February 9, 2018, the Chicago Police Department has been unable to locate the "unit files" for Kinnane, Hefel, and Laurie. CPD is also uncertain if the files for Homer and Babicz are complete. Ex. 1 (February 9, 2018 cover letter from D. Noland). There are no assurances that all of these files will be found and produced.

As explained in Plaintiffs' motion for sanctions, this information was plainly responsive to numerous discovery requests. These files include documents regarding discipline and duty status that bear directly on the Defendants' credibility as well as Plaintiffs' *Monell* claims in this case. Timely disclosure of these documents no doubt would have led to additional discovery regarding Officers Wrigley's and O'Keefe's false testimony under oath in the *Williams* criminal case, false police reports in that case, and the CRs that arose from that conduct and which ultimately determined that Officers Wrigley and O'Keefe had indeed lied in their police reports and under oath -- lies that caused Mr. Williams to spend more than a year in Cook County jail until video evidence demonstrated that Wrigley and O'Keefe fabricated the case against him out of whole cloth in a

---

[1] The City marked these documents as confidential under the Confidentiality Order, necessitating a filing under seal. During a meet and confer, the City stood on that position, but did agree that at least this general description of the documents may be publicly filed.

2

manner extremely similar to how the Plaintiffs allege these officers lied about underling events in this case.

In short, the documents provided on February 9, 2018 are precisely the documents that should have been provided years ago pursuant to the Federal Rules of Civil Procedure and this Court's order that the City produce the personnel files. *See* Dkt. 114. The City instead produced a file they called the "personnel file," but which contained benign documents such as paperwork associated with the officers' job applications, without any documents showing that these officers had been stripped of their police powers. *Compare* Exs. 2-3 (Unit Files of Officers O'Keefe and Wrigley) *with* Ex. 4-5 (Personnel Files of Officers O'Keefe and Wrigley).

When Plaintiffs met and conferred with the City prior to filing their sanctions motion, the City explained that the personnel files did not contain the information showing that Wrigley and O'Keefe had been stripped of all police powers, and a February 6, 2018 production of updated personnel files for Wrigley and O'Keefe appeared to confirm that position. We now know that this was a matter of semantics. The City called the files that they first produced in 2016 and again on February 6, 2018 "personnel files," whereas they refer to the newly produced files, with the personnel information relevant to Plaintiffs, as the officers' "unit files."

This explanation is troubling for multiple reasons. First, the Court may recall from the recent *Fields* trial (litigated by some of the same attorneys and law firms involved in this case) that the term "unit file" had a specific meaning at the CPD: unit files were the running investigatory files relating to particular investigations, files that were kept in file cabinets back at the Area. The plaintiff in *Fields* referred to these "unit files" as "street files" because they seemed to be outside of the City's system for responding to subpoenas.[2] The same term now resurfaces in the context of what appears to be a

---

[2] *Palmer v. City of Chicago* also notes that the Chicago Police Department referred to the files commonly known as street files "as office, unit, or working files." *Palmer v. City of Chicago*, 755 F.2d 560, 565 (7th Cir. 1985) (internal citation omitted). In discussing street files in *Fields*, this Court held that plaintiff's "evidence,

personnel file kept outside the CPD's system for responding to written discovery requests, issued pursuant to the Federal Rules of Civil Procedure and enforced by Court Order.

Second, it is now clear that the City has routinely been producing sanitized personnel files in response to discovery requests and court orders to produce such files. As the Court is likely aware, the CPD generally does not voluntarily produce personnel files in discovery notwithstanding the case law from this district holding that such documentation is discoverable. *See, e.g.*, *Clark v. Ruck*, 13-CV-03747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014) (collecting cases for proposition "that, in § 1983 cases involving allegations of police misconduct, personnel files of the defendant officers are discoverable, as they may lead to evidence admissible under Federal Rule of Evidence 404(b)."). Indeed, the City was unwilling to produce personnel files in this case without a Court order, *see* Dkt. 113 at 2 ¶ 4, and the Court issued such an order, Dkt. 114. It now turns out that the City was not responding to that order, or the countless other similar orders in other cases, by producing genuine personnel files, but rather was storing key documents in the previously unknown "unit files," meaning the discovery violations at play in this case are much more far-reaching and troubling than those discussed in Plaintiffs' initial motion. Defense counsel in this case reports that the City's lawyers discovered the existence of the unit personnel files only after Plaintiffs filed their sanctions motion. It appears that for many years when plaintiffs requested personnel files and courts ordered the production of the personnel files, plaintiffs were actually receiving a sham personnel file.

The City has still not explained why the unit personnel files were not produced years ago. Whatever inquiry the City made in the last week should have been made years ago, and it is unclear what—besides the specter of exposure at trial, as occurred recently in the *Frugoli* case before Judge Kendall—prompted the February 2, 2018 disclosure. Likewise, the City made the February 9, 2018

---

including evidence of systematic underproduction of police reports, was sufficient to show a systemic failing that went beyond his own case." *Fields v. City of Chicago*, 10 C 1168, 2017 WL 4553411, at *3 (N.D. Ill. Oct. 12, 2017).

disclosure only after Plaintiffs' counsel expressed surprise during the meet and confer process in connection with the sanctions motion that personnel files would not include any indication that officers had been stripped of their police powers. But the point of the discovery rules is that it should not require the fear of exposure at trial or during a sanctions hearing for the City to play by the rules. In fact, had this case gone to trial in August as originally scheduled, it is likely that none of the discovery misconduct or perjury would ever have come to light. The discovery violations in this case are part of a much larger pattern in which the City simply names certain collections of documents in a manner that shields them from discovery.

In sum, the City's February 9, 2018 production is as troubling as the February 2, 2018 production. Plaintiffs renew their request for a default judgment given the systemic discovery violations in this case.

Respectfully submitted,

/s/ Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
al@alhofeldlaw.com
alhofeldlaw.com

/s/ Scott Rauscher
Jon Loevy
Scott Rauscher
Theresa Kleinhaus
Loevy & Loevy
311 N. Aberdeen St., Third Floor
Chicago, Illinois 60607
Telephone: (312) 243-5900
Email: tess@loevy.com
scott@loevy.com
jon@loevy.com

*Attorneys for Plaintiffs*